## WILLIAM T. RILEY *v.* STATE OF MARYLAND

[No. 8, January Term, 1941.]

*Decided March 5th, 1941.*

The cause was argued before MITCHELL, JOHNSON, DELAPLAINE, and COLLINS, JJ.

*William L. Wilson, Jr.,* and *Edward J. Ryan,* submitting on brief, for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *Morgan C. Harris, State's Attorney for Allegany County,* on the brief, for the State.

MITCHELL, J., delivered the opinion of the Court.

William T. Riley, the appellant, was indicted by a grand jury of Allegany County for the crime of abortion, in violation of section 3 of Article 27 of the Code, (Flack's Ed. 1939). Upon a plea of not guilty, he waived a jury trial and submitted the case to the court. He was found guilty and sentenced by the court to the Maryland House

of Correction for the period of eighteen months, and from that judgment this appeal was taken.

No question has been raised as to the sufficiency of the indictment, and the questions presented for the consideration of this court arise from the reservation of exceptions by the defendant to the admission of evidence. The testimony bearing upon these exceptions is not set forth in question and answer form, but is summarized in the record and was developed in the following order:

Dr. Richard Williams, whose qualifications were admitted, testified to the fact that he had examined Mrs. Ronalda Sapp and found her suffering from an infected abortion performed on her by means of a catheter, and that she was taken to a hospital where she was operated upon and the afterbirth removed. He detailed the manner in which abortions may be performed and the instrumentalities used for that purpose. Stating that he had examined certain instruments and medicine, he was then asked to examine the contents of a box presented to him; to designate such medicines, if any found therein, as might be used for the purpose of producing abortions, and state the manner in which they could be used. Objection to the introduction of this evidence was interposed, and the overruling of the objection forms the basis of the first exception.

Continuing, the doctor identified the contents as containing a hypodermic needle, morphine, strychnine, atropine and various unlabeled drugs, some of them being aspirin and forms of opium. Other contents consisted of knives scissors and clamps, such as are used by the medical profession. These he stated could be used for the purpose of performing an abortion, including a bottle of ergot generally used to control bleeding. He further testified that Mrs. Sapp was confined to the hospital for two weeks.

Returning to the first exception, we are unable to perceive upon what theory the trial judges acted, inasmuch as by overruling the objection they permitted to be introduced in evidence the articles mentioned in the pre-

ceding paragraph without any showing of connection between them and the traverser, as for all that appeared at the time of their introduction the traverser had never seen them nor been identified with them in any manner. Obviously, their introduction in evidence under such circumstances was an invasion of the rights of the traverser, which tended to influence the jury, and it cannot be assumed that he was uninjured thereby. The action constituted reversible error.

Mrs. Sapp was then called and testified to the fact that she, having become pregnant in March, 1940, on May 21st of that year consulted the defendant, who conducted a business known as "Dingle Cleaners," on Green Street in the City of Cumberland, with the design of having an abortion performed; that the defendant agreed to perform the operation for the sum of fifty-five dollars; that she returned to the same place the following day, where at 8:30 a. m. the operation was performed by him in a back room of the cleaning establishment of the defendant; after detailing the manner in which it was performed, she stated that no one else was present at the time; that she walked home after the operation; late that night developed some bleeding, became ill, and subsequently entered a hospital for treatment.

Dr. Knight Reynolds testified that he was called in consultation in the case on May 25th by Dr. Williams, because Mrs. Sapp was suffering from a hemorrhage of the womb; that the bleeding was caused by a retained afterbirth in the womb due to an incomplete abortion, which afterbirth was removed at the hospital.

Terrance J. Boyle testified as being the County Investigator for Allegany County, who upon complaint to him had talked to Mrs. Sapp on May 24th, 1940, and secured from her a sworn, signed statement, which in substance reveals the same state of facts to which she testified, as hereinbefore detailed. As a result of the information so acquired, the witness further stated, he then obtained two search warrants; one of which was designed for the search of the premises of the defendant

known as "Dingle Cleaners," and the other of which was for the purpose of searching his automobile.

Thereupon the State offered in evidence the two search warrants above mentioned, with the affidavits thereto annexed, and with the signed and sworn statement of Mrs. Sapp, as to the warrant to search the premises, annexed. To the introduction of each of those search warrants, the affidavits attached thereto and the articles seized thereunder, the traverser objected and the overruling of those objections raises the next two exceptions found in the record. These will be considered together.

Without setting forth at large herein the search warrants to which reference has been made, and the affidavits to the same, it may be stated that the preamble in each of the warrants in substance recites that it is made apparent to the Trial Magistrate issuing the same, based on the written information and oath of the County Investigator applying for the warrants, that the "affiant"—not the issuing Trial Magistrate—"has reasonable cause to believe and does believe that the law in relation to abortion, section 3, Article 27, is being violated"; followed by the designation of the premises and automobile, respectively, used, kept, rented or occupied by the traverser, upon, or in which, certain described medicines, drugs and medical instruments are kept or concealed, for the purpose of producing abortions.

The witness Boyle was then recalled, and testified that he searched the Green Street premises and found a number of instruments and various medicines; that the articles contained in a large box which had been testified to by Dr. Williams were found on said premises; that those contained in a smaller box were found in the defendant's automobile, and that in the latter was also found a doctor's bag. He further testified that the warrants were executed on May 25th, 1940; that at the time the automobile was searched there was no one in it; that at said time the sheriff had the keys to it; that upon the occasions of both searches the defendant was confined in jail and not present, and that the warrants were ob-

tained and the searches made for the purpose of obtaining additional evidence against the defendant.

The State having concluded its case, the defendant was called in his own defense. He denied the commission of the offense, and sought to explain his reasons for the possession of the instruments and drugs above mentioned, stating that he was a former medical student, and that some of the articles discovered had been given him by a doctor who was then deceased.

An employee of the defendant, next called as a witness, testified that Mrs. Sapp was not a visitor to the defendant's place of business on the date of the alleged operation. And it appears that an additional exception was taken upon the theory that in the cross-examination of the latter witness, questions not proper because not brought out in the chief examination were asked by the State. Objection to the latter line of testimony forms the ground of the last exception, which, however, was abandoned by the appellant in this appeal.

It will be noted that the two remaining exceptions raise practically the same question; the first having been reserved to the overruling of objections concerning testimony referring to articles seized under the search warrants, prior to the introduction of the warrants and affidavits in evidence; and the second to the actual introduction in evidence of said warrants and affidavits, of evidence secured by virtue of the same, and of testimony in connection therewith.

In the cases of *Mazer v. State (Minikin v. State)* 179 Md. 293, 18 A. 2nd 217, we definitely construed chapter 749 of the Acts of 1939, Code, art. 27, sec. 306, as being mandatory with respect to the requirement that the question of probable cause for the issuance of a valid search warrant should be determined by the judge or justice of the peace who issued the warrant, and not by the person who verified the complaint and applied for the same. It would be useless to prolong this opinion with the reasons for that conclusion, and reference is therefore made to said cases and the authorities therein cited

in the above connection, in lieu of further discussion in this opinion.

Had motions to quash the search warrants in the case now before us been made in the trial court, under the ruling in the *Mazer* and *Minikin* cases we would have no hesitancy in declaring both of the instant warrants fatally defective. However, it not appearing from the record that either motion to quash the warrants or objections to their form were made in the trial below, the obvious defects in the same cannot now be considered in this court. Code, art. 5, sec. 10; *Goodman v. State,* 178 Md. 1, 11 A. 2nd 635; *Allen v. State,* 178 Md. 269, 13 A. 2nd 352.

The substance of the warrants and affidavits forming the basis for the indicated searches having been heretofore set forth, it is well to note that they should be considered in conection with the provisions of chapter 749 of the Acts of 1939, supra, which provides in part as follows: "Whenever it be made to appear to any judge of * * * the Circuit Courts in the counties of this State, * * * by a writing signed and sworn to by the applicant, that there is probable cause, the basis of which shall be set forth in said writing to believe that any misdemeanor or felony is being committed by any individual, or in any building, apartment, premises, place or thing within the territorial jurisdiction of such judge * * * or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing, then such judge * * * may forthwith issue a search warrant directed to any duly constituted policeman, constable or police officer authorizing him to search such suspected individual, building, apartment, premises, place or thing, and to seize any property found liable to seizure under the criminal laws of this State, provided that any such search warrant shall name or describe, with reasonable particularity, the individual, building, apartment, premise, place or thing to be searched, the grounds for such search and the name of

the applicant on whose written application as aforesaid the warrant was issued. * * *"

It is noted that in the case of the application for the warrant to search the Green Street premises, the record shows that the oath of the applicant as to probable cause was also accompanied by a sworn, signed statement of Mrs. Sapp, giving full details as to the date, place and the circumstances connected with the alleged abortion by the defendant named therein; and that the application praying that said statement of Mrs. Sapp be considered as a part thereof also embraced the oath of the applying officer as to the question of probable cause.

Furthermore, it is noted that in the case of the application for the warrant to search the automobile of the defendant, the oath fails to set forth any basis for the belief that there was probable cause that a misdemeanor was being committed by any named defendant; and states the design of the applicant to be that of seizing the articles or commodities described in the affidavit, for the sole purpose of using them as evidence against him.

In the former application the affiant makes oath that he has reasonable grounds for belief that section 3 of article 27 of the Code relating to abortion is being violated on the designated premises by a named defendant, the full details of the violation being shown by the accompanying sworn statement of Mrs. Sapp; while in the latter application the oath merely refers to an abortion as having been performed on Mrs. Sapp, fails to detail the place at which it was performed or name the defendant, and affirms only that the affiant has reason to believe that certain drugs, poisons, medicines and instruments used in connection with the alleged abortion are contained in a designated automobile which said affiant desires to take into possession—"to be used in evidence."

The terms "reasonable grounds" in the first mentioned affidavit and "reason to believe" in the second affidavit, as the basis for the application on the part of the affiant, are used instead of the term "probable cause," but while

such terms vary from the language of section 306 of article 27, it is noted that in the case of *Goodman v. State, supra,* wherein the term "reasonable cause" was used, this court construed the expression as being interchangeable and synonymous with the term "probable cause." 50 *C. J.* 420. It would therefore seem that the variance from the directions of the statute, as above indicated, may be ignored.

Probable cause is a mixed question of law and fact. The test for the issuance of a search and seizure warrant, therefore, is that if the information as to the facts and circumstances acquired by the applicant are such as to justify a man of prudence and caution to believe that an offense is being committed, a sufficient basis for the oath and application is established. 24 *R. C. L.* 707; *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543. However, as has been shown by the quoted excerpt from the statute, the presence of probable cause for the issuance of the warrant in this State can only be determined by the judge to whom the application is made.

Formerly in this state, as in many jurisdictions at the present time, evidence obtained under an illegal search warrant was admissible. *Lawrence v. State,* 103 Md. 17, 63 A. 96; *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190; *Nolan v. State,* 157 Md. 332, 156 A. 268. But since the rulings in the cited cases, by virtue of the passage of chapter 194 of the Acts of 1929, Code, art. 35, sec. 5: "No evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured by, through, or in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declaration of Rights of this State; nor shall any evidence in such cases be admissible if procured by, through or in consequence of a search and seizure, the effect of the admission of which would be to compel one to give evidence against himself in a criminal case." *Heyward v. State,* 161 Md. 685, 158 A. 897; *Gorman v. State,* 161 Md. 700, 158 A. 903; *Baum v. State,* 163 Md. 153, 161 A. 244; *Sugarman v. State,* 173 Md. 52, 195 A. 324.

And when the above section of the Code is read in connection with the Fifth Amendment to the Federal Constitution to the effect that no person shall be compelled in a criminal case to be a witness against himself; and with the Twenty-Second Article of the Maryland Declaration of Rights, that no man ought to be compelled to give evidence against himself in a criminal case, we are constrained to hold that the evidence secured as a result of the searches under the instant warrants was inadmissible, and that the objection to its admission should have been sustained.

In *Gouled v. United States*, 255 U. S. 298, 41 S. Ct. 261, 265, 65 L. Ed. 647, it is said: "Search warrants * * * may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but * * * they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it be taken." *United States v. Lefkowitz*, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877.

It may be added that we do not find that the fact that the defendant testified in his own behalf and attempted to justify his possession of the articles seized in the search of his automobile, after having previously objected to the introduction of said articles as evidence against him, was in effect a waiver of such objection. It is true that when a defendant who has been subjected to an illegal search takes the witness stand in his own behalf and admits the unlawful possession of contraband, the error, if any in the admission of evidence illegally obtained is waived by such admission, *Cornelius on Search and Seizure* (2nd Ed.) par. 215; but we do not find the articles seized under the warrants in the instant case to be of the character answering the description of contra-

band. Officers of the law are to be commended for diligence in bringing transgressors to justice. Nevertheless, the constitutional limitations designed to protect the citizen from unreasonable search and seizure must be observed. And because of errors on the part of the trial court, (a) in permitting to be offered in evidence the instruments mentioned in the first exception, in connection with which Dr. Williams described their uses, (b) and (c) admitting over the traverser's objection the two search warrants heretofore considered in connection with which the instruments, appliances and medicines seized thereunder were again exhibited to the jury, the judgment appealed from must be reversed.

*Judgment reversed, and new trial awarded.*