## DE ANGELO *v.* STATE
[No. 60, October Term, 1951.]

*Decided January 10, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*R. Palmer Ingram,* with whom was *Malcolm J. Coan,* on the brief, for appellant.

*Robert M. Thomas,* Assistant Attorney General with whom were *Hall Hammond,* Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *Charles E. Orth, Jr.,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

Here are appeals from judgments and sentences imposed on verdicts of guilty on charges of sale of lottery tickets; having in possession lottery tickets, slips and records; gambling on horse races; and making books on horse races. The cases were tried before the trial judge without a jury.

On March 16, 1951, about 1 P. M., Sergeant Joseph J. Byrne went to the premises at 236 S. Eaton Street, Baltimore, a private dwelling, having with him a search warrant signed by Chief Judge W. Conwell Smith, allowing him to enter those premises. That search warrant also authorized him to diligently search for lottery tickets and other paraphernalia used in the unlawful operation of lottery, and to bring said lottery tickets and lottery paraphernalia, so found, also the body of a person known to the officer "as Chickie and all other persons who may be found participating in said lottery before me, the subscriber, or some Police Justice of the said State, in and for the City aforesaid, to be disposed and dealt with according to law."

Sergeant Byrne knocked on the door of the dwelling, which, according to the testimony belonged to a Mr.

Martini and his wife, Clemy, the parents of "Chickie", Anthony Martini, mentioned in the search warrant. Receiving no answer to his knock, Sergeant Byrne tried the lock on the door and finding it unlocked walked in and found there Mr. Martini and his wife and a 13 year old girl. He showed Mrs. Martini the search warrant and read sections to her. Sergeant Byrne testified that: "She then asked if she could get a drink of water. I said yes, and she started back. It is necessary to pass the side door to get into the dining room. So I just walked to the side door, watched her go back and she started back. She ran over to a buffet, reached in, pulled out a brown paper bag and shoved it into her pocket. I followed immediately and took it away from her. It contained lottery numbers and $5.85 in money." He then tried to quiet Mrs. Martini, who was very excited. Just then the side door opened and the appellant, De-Angelo, stepped immediately inside the door. Sergeant Byrne said: "I told him the place was under search and seizure warrant and told him to come into the room where I was. He was in the hallway. He came in. I showed him the warrant, showed him the date, showed him the judge's signature and told him I had a right to search him". Just then two small children, six and seven years of age, came running from the upper floors and approached Mrs. Martini. Sergeant Byrne then asked Angelo if he was "going to let me search" him. Angelo replied "No." The Sergeant then asked: "What effort would you put up if I attempted to search you, physical violence?" Angelo replied: "Yes, if you attempt to search me, I will fight." Sergeant Byrne then took Angelo to the police station where he was searched in the presence of the turnkey. They found on Angelo: "222 numbers, 7 slips, $41.52 in play, 2 slips containing 5 race horse bets and a $5 bill, wrapped in between them". On cross examination Sergeant Byrne admitted that when Angelo stepped in the house he was not violating any law in his presence, and that he had never seen Angelo before.

At the trial of these cases testimony as to these articles and the articles themselves, found on the person of Angelo, were offered in evidence over objection. Appellant contends that these were not admissible in evidence, over his objection, and with this contention we agree.

Code, Article 35, Section 5, commonly known as the "Bouse Act", provides that no evidence shall be admissible in a trial of a misdemeanor which has been procured by an illegal search and seizure. Of course, if a misdemeanor be committed in the presence of an officer who is charged with the enforcement of the law, he is authorized, without a warrant to arrest the offender. As an incident of the arrest he is authorized to search the prisoner, and the tangible evidence or instrument of the crime, whether upon his person or within his use and immediate possession, can be seized, taken into possession and examined. If the arrest was lawful, the search was lawful and the articles found on him were admissible in evidence. If the arrest was unlawful, the incidental search in connection therewith was likewise in violation of the constitutional rights of the defendant. *Callahan v. State,* 163 Md. 298, 301, 162 A. 856. *Hill v. State,* 190 Md. 698, 701, 702, 59 A. 2d 630. *Lawrence v. State,* 103 Md. 17, 37, 63 A. 96. In the case now before this Court the arresting officer admits that the accused was not violating any law in his presence. The appellee admitted that no obvious misdemeanor was committed in the officer's presence by the accused.

The State, however, relies on the words in the search warrant, which commands the officer to bring in "all other persons who may be found participating in said lottery". *Smith v. State,* 191 Md. 329, 340, 62 A. 2d 287, 5 A. L. R. 2d 386. The answer to this argument is that under all the evidence there was nothing to show that appellant was participating in the lottery.

The State relies on the case of *Smith v. State,* 191 Md. 329, 340, 62 A. 2d 287, 5 A. L. R. 2d 386, *certiorari denied,* 336 U. S. 925, 69 S. Ct. 656, 93 L. Ed. 1087, *supra,*

where one of the defendants, who had not been described in the search warrant, was held to have been lawfully searched when she entered the premises. However, that defendant, previous to the search, had told the officer that she was taking bets, admitted ownership of the pocketbook searched, and handed it and the papers therein to the officer. In *Lambert v. State,* 196 Md. 57, 66, 67, 69, 75 A. 2d 327, 331, 332, relied on by the State, the officers with a search arrant went to the back door of the residence and knocked. There being no answer they broke the glass and went in on the first floor and found no one there. The cellar door was locked by a reinforced door which they tried to break in without success. No one was on the second floor. The officers then went outside to the basement door in the rear. They broke that door in and while doing so saw small pieces of paper coming out of the chimney. After breaking the basement door they were admitted. Both doors to the basement were very heavily reinforced. In one of the rooms of the refinished cellar was a card table and several chairs where the appellants were playing cards. An oil burner was burning. Charred papers were found in the oil burner which were later found to contain the names of horses and race tracks, indicating bets had been recorded on these horses. All around the table were telephone plugs. The listed telephones were concealed between the ply-board and the stone wall. Also found were an adding machine, two dozen pencils, pads and other articles. This Court there found: "From these facts we can deduce no lawful right of the appellants to be on the premises other than their mere presence, * * * it seems to us, beyond any reasonable doubt, that the appellants were there for the purpose of running a gambling establishment and of taking bets on races, and that these bets were noted on paper. We cannot find any error in the verdict of the court, that all of the appellants were guilty * * *." The facts in the instant case are not comparable to those in the *Lambert* case, *supra.*

In *Delnegro v. State*, 198 Md. 80, 81 A. 2d 241, relied on by the appellee, the officers rapped on a heavily barred door and demanded admittance. In the room the officers found eight persons, four gaming tables, paper bags, and envelopes containing money and number slips. The officers searched the men and seized $27,000.00. A ticker tape was in operation, and the telephones were continually ringing. One of the officers found the calls dealt with the placing of bets. While the officers were in the house, knocks were heard on the rear door at five different times. Each time a deputy opened the door, on seeing a Negro holding a paper bag, and asked him to come in. As each one entered, the officer requested him to put the bag on the table and be seated. In each bag were lottery tickets and cash. These five men were arrested. We there found that the Negroes were committing a misdemeanor in the presence of the officers in carrying the lottery tickets and money to promote the gambling operation, and therefore, the action of the officers in making the arrests and seizure were lawful.

The undisputed facts in the case at bar are very different. We are of opinion that there were no reasonable grounds to believe, assuming that that would have been sufficient, that the appellant was participating in a lottery, merely by entering a private dwelling where the only suspicious circumstance at that time was the presence of the lottery tickets in the house. Not having been asked why he came in the house, he gave no explanation of his presence there. There are many reasons why he might have lawfully entered this private dwelling. Therefore, the arrest and search of the appellant were unlawful and the admission in evidence of the articles found as a result of that search and the testimony thereto was erroneous. The judgments will therefore be reversed and new trials awarded.

*Judgments reversed, with new trials.*