MAZER *v.* STATE

[No. 43, October Term, 1956.]

62

*Decided December 10, 1956.*

*Motion for rehearing or modification of opinion filed January 8, 1957. Motion for rehearing denied, and opinion modified, January 15, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Alexander Stark,* for appellant.

*Stedman Prescott, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City, J. Harold Grady* and *Saul H. Harris, Assistant State's Attorneys,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

Robert M. Mazer was found guilty, in a trial by the court without a jury, on an indictment in four counts, the first of which charged unlawful possession on January 11, 1956, of cannabis, a narcotic drug popularly known as marihuana. After a motion for a new trial had been overruled by the Supreme Bench, he was sentenced to five years in the House of Correction. His appeal, among other points, challenges the sufficiency of the evidence to convict and the admissibility of certain evidence.

Mazer was arrested on the night of January 11, 1956, when he kept an appointment on Franklin Street with a man named Wright and another man. Evidently the police had previously arranged with Wright to be present at the meeting in another car. When Mazer drove up in his two-door, two-tone, blue Cadillac, the police searched him but found nothing. Lieutenant Carroll testified that he told Mazer "the men had told me they had given him $25 for the purchase of some marihuana and he was supposed to meet them there", and that Mazer said, "I took $25 from them and told them I would get the marihuana * * * but I didn't mean to get them any marihuana, I was just going to beat them out of their money and make a payment on my car." Lieutenant Carroll testified: "I said if that was the case why did you stop back to see them after you had gotten the money, and he couldn't answer that." A search of Mazer's car disclosed a patch of a green substance on the floor mat in the rear of the car. A sample scraped from this patch was tested by the witness

Mills, a Government chemist, who testified that it was cannabis, and the sample was offered in evidence over objection.

The State also offered evidence to show that on the night of January 3, 1956, three boys, Sullenger, Gray and Fetty, accompanied by a man named Myers who had offered to obtain marihuana for them and to whom they had given $25, drove to a Howard Johnson restaurant on Pulaski Highway. Gray and Fetty remained in the car, but Myers and Sullenger entered a green Cadillac that drove up and parked. Gray testified the Cadillac was two-tone green in color. Sullenger testified that after he and Myers had entered the Cadillac, driven by a man he identified as Mazer, Myers gave Mazer $25 and Mazer gave Myers an envelope or package supposed to contain marihuana. Myers later opened the package and split up the contents. He gave part of the loose stuff in the package to Sullenger, who testified Myers got it out of the same package that was handed him by Mazer. Later in the evening Sullenger, Gray and Fetty were arrested in Brooklyn, but Myers was not apprehended. They were charged with possession of marihuana and pleaded guilty, but had not been sentenced at the time of Mazer's trial. It was stipulated that Mr. Mills, if present, would testify that he analyzed material turned over to him by Sergeant Vaught, who took it from Sullenger on January 3, 1956, and that the material was marihuana.

The appellant filed a demurrer to the indictment on the grounds that it was vague and indefinite and that the joinder of the second and third counts, setting up a prior conviction on June 28, 1951, of possession of cannabis, was prejudicial. He also filed a demand for particulars. The State excepted to some of the particulars demanded and supplied others, but there was no hearing on the demurrer or exceptions prior to the trial. The appellant was arraigned and pleaded not guilty. While the State's first witness was on the stand, counsel for the appellant sought to be heard on the demurrer and claimed for the first time that the particulars supplied were insufficient. The court ruled that the motion came too late, but said: "You can accomplish the same result by motions later on in the case, but I am not going to now, at this stage of the proceeding,

consider the motion to quash." The record does not show that counsel for the appellant asked for a ruling on the demurrer at any later time, although he made a full argument on a motion for directed verdict at the close of the State's case, which was renewed at the conclusion of the whole case.

Under the circumstances we think the appellant waived or abandoned his request that the court rule on the "demurrer". Under Rule 3 (a) of the Criminal Rules of Practice and Procedure, demurrers and motions to quash are abolished in favor of a motion to dismiss. Under 3 (b) of the same Rules, defenses and objections based on defects in an indictment must usually be made before pleading and before trial, although the trial court may for cause shown grant relief from the waiver, or defer ruling until the conclusion of the case. We find no abuse of discretion in the court's ruling, or any excuse for failure to renew the motion to dismiss, if it may be considered in that light. Cf. *Schanker v. State,* 208 Md. 15, 18. We may add that no reason was suggested in the argument in this Court as to why the indictment, closely following the language of the statute, Code (1951), Art. 27, sec. 364, was defective. The first count alone would support the general verdict of guilty, and the sentence did not exceed the maximum for a first offense. Code (1951), Art. 27, sec. 369.

The appellant contends that the sample taken from the rear of the appellant's car should not have been admitted in evidence because of its minute quantity, about 15 grams, of which 2 grams were used in a chemical test, and because the chemist was not properly qualified. The size of the specimen is clearly not controlling. Cf. *Peachie v. State,* 203 Md. 239. The State showed that Mr. Mills was employed as a chemist in the United States Chemical Laboratory and it developed that he had been working on similar samples for the past three years under a Chief Chemist who had had twenty years experience in narcotics. The appellant did not question his qualifications at that time, or object to his testimony until the sample itself was offered. Moreover, the appellant seemed to concede his qualification in the stipulation in regard to the sample obtained on January 3, 1956. We find no error.

The appellant contends, however, that the chemist's testi-

mony as to the sample obtained on January 11, 1956, was too uncertain to establish the *corpus delicti*. Code (1951), Art. 27, sec. 345 (n), defines "Cannabis" to include all parts of the plant *Cannabis sativa L.,* but not to include "the mature stalks of such plant, nor any product or manufacture of such stalks, except the resin extracted therefrom * * *." The reason for the exception is said to be that the fibers of the mature stalk, commonly known as hemp, are widely used in the manufacture of rugs, coverings and rope. The appellant claims that the chemist in his testimony did not exclude the possibility that the sample he examined was stalk material. We may note that Code (1951), Art. 27, sec. 367, provides that in an indictment for violation of the narcotics law, it is not necessary to negative any exception, "and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant."

But in any event we do not so read the testimony of the witness. He stated positively that his analysis showed marihuana, or cannabis, by tests including visual, microscopic and chemical examination. In the last test he extracted the resinous material. In cross-examination, counsel for the appellant said it appeared to him "there is some sort of fibrous material or something in here, in with this greenish substance—." The witness replied that "* * * it probably does have a certain amount of other things in it, the marihuana itself doesn't usually come in a pure form, it has other material in it that may range anywhere from, say, one to ten per cent. * * * I don't look for anything but marihuana." "Q. And, of course, it might be stalk material or anything else? A. You mean from— Q. Stalk material. A. Yes sir." We think it is clear that the witness was saying that the foreign matter might include stalk material, not that the sample he had testified was at least ninety per cent pure marihuana might have been wholly stalk material. The appellant's counsel in his first inquiry clearly differentiated between the fibers and the green substance that the chemist identified. We think the testimony permits the inference that the substance found in the car was marihuana, possession or control of which was the essence of the crime charged.

The appellant argues that the mere fact that marihuana was found in his car does not establish beyond a reasonable doubt that he put it there, or that it was in his possession or under his control. Reasonable probability of its connection with the crime alleged, under the circumstances, is the only test of admissibility. *Watson v. State,* 208 Md. 210, 216, and cases cited. The question of reasonable doubt is for the trier of the facts. The question for us to decide is simply whether there was sufficient evidence from which the trier of facts could properly draw the conclusion of guilt beyond a reasonable doubt. *Basoff v. State,* 208 Md. 643, 653; *Yanch v. State,* 201 Md. 296, 300; *Berry v. State,* 202 Md. 62, 67; *Seward v. State,* 208 Md. 341, 346. While in the *Yanch* case we found no evidence of possession by the wife of a tavern keeper who had no interest in the tavern, which was frequented by various customers, we cited cases such as *Shelton v. State,* 198 Md. 405, and *Hayette v. State,* 199 Md. 140, where an owner was held to be in possession of lottery slips found on the premises.

But if we assume, without deciding, that the evidence of possession on January 11, 1956, was insufficient to support the verdict, there was clear evidence of possession of marihuana on January 3, 1956. The State was not confined in its proof to the date alleged in the indictment. *Yanch v. State, supra,* p. 300; *Wilson v. State,* 200 Md. 187. Evidence of the prior offense was not only admissible on this theory, but it tended to support and explain the discovery of marihuana in the appellant's car on the later date. Cf. *Hunter v. State,* 193 Md. 596, 601.

The appellant finally contends that he was denied a fair trial, in violation of constitutional requirements, but beyond the arguments already discussed the only basis for the contention seems to be that testimony of a prior conviction was offered by the State, and that the testimony of Sullenger, Gray and Fetty was of dubious value and included self-serving declarations, because their sentences were *sub curia* at the time of Mazer's trial. From a constitutional point of view mere errors or irregularities in a trial do not amount to a denial of due process, even though they might call for a reversal on

direct appeal, if prejudicial. See *Superintendent v. Calman,* 203 Md. 414, 421, and *Loughran v. Warden,* 192 Md. 719. In any event we find no error here. The evidence of the prior conviction on June 28, 1951, was admissible as a part of the State's case under the counts spelling out a second offense under Code (1951), Art. 27, sec. 369. Cf. *Peachie v. State, supra,* and *Hall v. State,* 121 Md. 577, 580. The testimony of the State's witnesses who had pleaded guilty to charges of possession was admissible, even though its weight might properly be considered by the trier of facts in the light of their situation. *Barber v. State,* 191 Md. 555, 561; *Lowe v. State,* 111 Md. 1. Even if we assume, without deciding, that these witnesses were accomplices, there was sufficient corroboration of their testimony. Cf. *Polansky v. State,* 205 Md. 362, 368.

*Judgment affirmed, with costs.*