WRIGHT ET AL. *v.* STATE

[No. 188, September Term, 1959.]

*Decided April 12, 1960.*

*Motion for rehearing filed April 27, 1960, denied May 19, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Edward J. Ryan* and *William L. Wilson,* for appellants.

*Robert C. Murphy, Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, James S. Getty, State's Attorney for Allegany County,* and *Donald W. Mason, Assistant State's Attorney for Allegany County,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The three defendants, Wright, Forkes and Isaacs were tried in the Circuit Court for Allegany County on a three-count joint indictment charging them with: (1st count) conspiracy to break and enter the storehouse of Montgomery Ward & Co. in Cumberland; (2nd count) attempting to break and enter said storehouse; and (3rd count) with being "rogues and vagabonds" under Code (1957), Art. 27, Sec. 490. Verdicts were directed in favor of all three on the first count and in favor of Forkes and Isaacs on the second count. Wright was found guilty by the jury on the second count, and all three were so found guilty on the third. They appeal from the judgments entered against them on all of these con-victions. Each was sentenced to two years' imprisonment on the third count, and Wright was also sentenced to two years on the second.

In their brief the appellants contend first, that they were illegally arrested and, second, that evidence obtained by search following their arrest was inadmissible. They filed a motion to suppress such evidence, which was granted in part and overruled in part. At the end of the trial the defendants sub-mitted motions for directed verdicts, and in argument (but

not in their brief) in this Court they have also challenged the sufficiency of the evidence.

At or about ten P.M. on August 27, 1959, Officer Gibson, of the Cumberland Police, saw two men about three hundred feet away from him walking along a street towards a blind alley in the rear of the Montgomery Ward warehouse and other buildings. This alley comes to a dead end at some railroad tracks. Following the tracks, the officer entered at that end of it and saw the defendant Wright standing in the alley at the Montgomery Ward loading dock. The warehouse was closed, and so were the stores in the neighborhood. The streets were deserted, but a bingo game was in progress in one building backing on the alley. The officer went over to Wright and asked him what he was doing in the alley. He also inquired as to his identity. Not being satisfied with Wright's answers, which were in part contradictory, Officer Gibson took him to a police call box. En route he saw another man (later found to be the defendant Isaacs) standing near a brightly lighted announcement sign on a church near the entrance to the alley, from which position he could observe the alley. This man promptly moved into the shadow of a telephone pole.

Officer Gibson telephoned for another officer to come to take Wright to the police station "for investigation." Officer Clayton responded, and Officer Gibson gave him a description of Isaacs. Officer Gibson then returned to the Montgomery Ward loading dock and rear entrance and found a large screwdriver sticking in the lock of the door and some gloves and a small screwdriver and a flashlight nearby. None of these had been there when the officer checked the area on his rounds two hours earlier.

Officer Clayton returned to the alley and talked further with Officer Gibson. He then cruised about the area until he found a man answering the description which Officer Gibson had given him of Isaacs. Isaacs was standing by a Ford automobile talking with another man, Forkes. An Oldsmobile was parked across the street from it, headed in the opposite direction. Officer Clayton asked Isaacs and Forkes if they had a car, and they said that they did, but they did not indi-

cate that it was either the Ford or the Oldsmobile, or that they had any connection with either of those cars. Officer Clayton took them both in to the police station, where Officer Gibson identified Isaacs as the man he had seen stepping into the shadow of the pole at the entrance to the blind alley. The three men were questioned by the police officers, but little of what they said was admitted into evidence.

At the police station Isaacs said that the Oldsmobile was his, and a subsequent check of the license records of the State in which it was registered showed that it was registered in the name of his wife. Evidence found as a result of a search of this car was excluded. The Ford carried license plates from the same State as the Oldsmobile, and Isaacs and Forkes had been found standing beside it. A witness who testified at the trial worked in a building very close to where the two cars were parked. He saw Isaacs and Forkes standing by the Oldsmobile, saw them cross the street to the Ford and saw one of them get in the Ford. He saw them both standing beside it when the police cruiser drew up, just before they were taken off in the cruiser. Just when he gave this information to the police does not appear.

The police searched the Ford to some extent, in addition to searching the Oldsmobile. In the unlocked glove compartment of the Ford they found an unmailed letter addressed to Wright's wife. The trunk was locked and they had no keys to it. This car was removed to police headquarters and the next day the police obtained a search warrant from a justice of the peace to search the Ford. As a result of the search they found sundry burglar's tools and two pistols in the trunk of the Ford. Over objection of the defendants the results of this search were admitted into evidence.

We may assume (without deciding) for the purposes of this case that the tests of the validity of an arrest for a misdemeanor made without a warrant were not met as to any of the defendants at the respective times of their arrests. See *Davids v. State,* 208 Md. 377, 118 A. 2d 636. Illegality of the arrests would not, however, prevent the defendants from being validly indicted and tried. *Martin v. State,* 203 Md.

66, 98 A. 2d 8; *Bryant v. Warden of Maryland Penitentiary,* 196 Md. 646, 74 A. 2d 833, and cases therein cited.

The appellants' argument virtually ignores the effect of the search warrant. The burglar's tools, which constituted important evidence on the "rogue and vagabond" charge, found in the trunk of the Ford were found in the execution of that warrant, not during a search made as an incident of an unlawful arrest. Yet their arguments for the exclusion of this evidence seem to rest on the latter theory, in support of which they properly cite *Davids v. State, supra; Le Faivre v. State,* 208 Md. 52, 116 A. 2d 368, 118 A. 2d 639; and *De Angelo v. State,* 199 Md. 48, 85 A. 2d 468. Each of those cases differs from the instant case. In *Le Faivre* there was no search warrant at all. In *Davids* there was a right to search under the Alcoholic Beverages Law, but Davids had done nothing to warrant his arrest and a search of his person. *De Angelo* was somewhat similar to *Davids* in this respect. The defendant came into a house which was in course of being searched under a warrant. It was held, however, that the warrant, though it authorized the arrest of anyone participating in the lottery at the premises in question, did not authorize the arrest of De Angelo. He had done nothing and had said nothing in the presence of the officers to show that he was participating in the lottery or that he was doing anything to justify his arrest. His arrest was held illegal, the search of his person in connection therewith was held unlawful and the evidence obtained by that search was held inadmissible under the Bouse Act, then as now codified as Sec. 5 of Article 35 of the Code. That evidence was not obtained in the valid execution of a search warrant.

In the instant case, the evidence which the appellants sought to exclude (both by motion to quash or to suppress and by timely objection) was not found as a result of a search made in the course of their arrest. It was made under the warrant. The fact that the search under the warrant was made without their consent seems quite immaterial, for the validity of the warrant and the right to search thereunder were not dependent upon the appellants' consent. *Martini v. State,* 200 Md. 609, 92 A. 2d 456.

The appellants do not challenge the affidavit as insufficient on its face to show probable cause, and its sufficiency is to be tested on the basis of the allegations therein set forth. *Burrell v. State,* 207 Md. 278, 113 A. 2d 884; *Tischler v. State,* 206 Md. 386, 111 A. 2d 655; *Smith v. State,* 191 Md. 329, 62 A. 2d 287. Nor do they challenge the warrant for non-compliance with statutory requirements. See Code (1959, Supp.), Art. 27, Sec. 551. Cf. *Goodman v. State,* 178 Md. 1, 11 A. 2d 635; *Riley v. State,* 179 Md. 304, 18 A. 2d 583.

This case was tried before a jury. To overturn the judgment in this Court for insufficiency of the evidence against any or all of the appellants, it would be necessary to show that there was no legally sufficient evidence from which the jury could find such defendant or defendants guilty beyond a reasonable doubt. See *Johnson v. State,* 221 Md. 177, 156 A. 2d 441; *Judy v. State,* 218 Md. 168, 146 A. 2d 29; *Mazer v. State,* 212 Md. 60, 127 A. 2d 630. Our review of the evidence leads us to the conclusion that the jury could find therefrom that all three of the defendants were associated together in the possession of the burglar's tools found in the trunk of the Ford. See *Kay v. State,* 167 Md. 218, 173 A. 246; *Bevans v. State,* 180 Md. 443, 24 A. 2d 792. We also think that the jury could properly find from the evidence that the defendants possessed these tools at a place and under circumstances from which an intent to break and enter feloniously a dwelling house, warehouse or storehouse could be presumed, in violation of the "rogue and vagabond" statute, Sec. 490 of Article 27 of the Code. See *Martini v. State, supra; Goldstein v. State,* 179 Md. 697, fully reported 22 A. 2d 471. We also think that the evidence of Wright's presence at the loading dock and of the finding of the screwdriver in the lock of the door and of another screwdriver, a flashlight and gloves there a few minutes after Wright's arrest was enough to warrant the jury in finding him guilty of attempting to break and enter the storehouse in question.

*Judgments affirmed, with costs.*