### HALL *v.* STATE

[No. 161, September Term, 1963.]

*Decided January 29, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Kenneth E. Pruden,* with whom were *Mitchell, Clagett & Euwer* on the brief, for the appellant.

*Russell R. Reno, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James H. Taylor, Assistant State's Attorney,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Convicted by a jury in the Circuit Court for Prince George's County upon an information charging the crime of robbery with a deadly weapon, James Daniel Hall appeals from the judgment and sentence entered upon the verdict. He contends: (1) his arrest was illegal; (2) his fingerprints, obtained fol-

lowing the arrest, constituted the fruit of an illegal arrest and thus should not have been admitted into evidence; (3) absent the fingerprints, there was insufficient evidence to identify him as a participant in the alleged crime.

At the trial, the State presented the following evidence. On the night of November 8, 1962 the Jumbo Food Store in Prince George's County was robbed. Shortly after 9:00 p.m. the store was entered by two armed men who forced one Donaldson, the manager, and one Davis, a clerk, to lie on the floor after first requiring Donaldson to open the store safe. The police were summoned soon after the robbers had left, and in the course of the investigation Officer Baxter discovered a latent fingerprint on the inside of the safe. The print was lifted and placed on a card which was subsequently filed in routine fashion in the Seat Pleasant police station. The appellant was described by Donaldson as having worn a stocking over his face at the time of the robbery, but Donaldson identified him at the trial as one of the robbers.

At this point in the trial, it became apparent to the defense counsel, not counsel on appeal, that the State would seek to introduce into evidence certain fingerprints taken from Hall at the police station some two months after the robbery. Counsel approached the Bench and explained to the court that if such was the State's intent he would make a motion to suppress the evidence of the fingerprints. The court thereupon directed the jury to retire and proceeded to take testimony on the circumstances surrounding the obtention of the appellant's fingerprints in January 1963. These circumstances relevant to the resolution of the legal issues raised here are as follows.

On the evening of January 19, 1963, more than two months after the robbery, Detective Officer Farran of the Prince George's County Police Department was on routine patrol when he was notified by radio about 7:30 p.m. that a prisoner under police guard at the Prince George's General Hospital had escaped. About a half hour later, while he was patrolling the hospital grounds, Officer Farran was notified via radio that a pedestrian had been struck (fatally it was later learned) in the northbound lane of the Baltimore-Washington Parkway. He proceeded to the scene and found fellow officers Baranski,

King and Hauncher there. He was advised by the officers that the appellant Hall, together with one George Jenkins and one Valorie Jenkins, had at the time of the accident been sitting in a nearby automobile which was stuck in the mud off the traveled portion of the parkway. It appears that Valorie had previously that evening been in the hospital visiting the prisoner, who later escaped, and who was the victim of the accident.

Officer Hauncher testified that the appellant offered certain identification papers but was told it was not necessary at the time, and that he could do so at the police station. He further testified that he had asked Hall and his companions to wait and be questioned because they had apparently been witnesses to the accident. Testimony of the other officers corroborated this purpose in detaining the trio. When Hall took the stand to explain his version of what took place on the parkway, he first stated that the police officer had asked for identification and had told him that they were being held until Detective Farran arrived. On cross-examination he admitted that he had agreed to wait.

After Officer Farran had completed his on-the-scene investigation, he ordered the appellant and his companions taken to the Seat Pleasant station for questioning. This was done, and Hall was turned over to Detective Bryan for questioning. The interrogation concerned Hall's involvement in the accident and possible participation in the escape of the prisoner. Hall admitted that he had driven Valorie to the hospital, where she had pretended to be the wife of the prisoner and given him certain articles of clothing. Subsequent to and as a result of this questioning an arrest warrant was sworn out against Hall. He was charged with conspiracy to aid and also with aiding and assisting an escape, both misdemeanors under Code (1957), Art. 27, §§ 38 and 139, respectively. Officer Bryan testified that after the warrant had been served Hall was fingerprinted, as a routine police procedure.

As a result of this testimony, the trial court overruled defense counsel's motion to suppress. The record indicates that the court felt that at the time of the fingerprinting, Hall was

properly charged, and therefore the evidence should be allowed. We agree.

The appellant first argues that the testimony, particularly that adduced during his examination, did not convincingly demonstrate that he was observed by the police committing a misdemeanor nor was he suspected of perpetrating a felony, in which latter case legal arrest could have been based on probable cause. It did show, he felt, that the conduct of the officers in detaining him amounted to an illegal arrest as we have defined an arrest in *Cornish v. State,* 215 Md. 64, 137 A. 2d 170. Relying also upon *Cornish,* the State maintained that the appellant was merely accosted or, alternatively, that the detention was entirely voluntary on his part.

In the view we take of the case, we need not inquire into the nature of the circumstances resulting as they did in Hall's remaining at the scene of the accident and his later going to the police station for questioning. We assume, without deciding, that the initial detention was illegal. Mere illegality of the initial arrest would not preclude a subsequent valid information and trial. *Wright v. State,* 222 Md. 242, 159 A. 2d 636; *State ex rel. Zell v. Warden,* 191 Md. 745, 59 A. 2d 737. However, would such illegal detention vitiate the warrant based upon information received from the appellant while he was unlawfully detained? If it did, and the warrant falls, then the appellant was at all times illegally held by the police prior to the taking of his fingerprints. This would raise a serious question as to whether the fingerprints were, as appellant contends, illegal fruit inadmissible under the principles enumerated in *Mapp v. Ohio,* 376 U. S. 643.

That the police may fingerprint one held in proper custody is no longer open to question. Many jurisdictions have so held in the face of objections under both the Fourth and Fifth Amendment provisions of the Federal Constitution. It has been the law of this State since 1909 when we decided *Downs v. Swann,* 111 Md. 53, 73 Atl. 653, and the appellant does not challenge this.

We are of the opinion that the warrant was valid, even though it may have been based upon admissions made by Hall during the interrogation. We think that what we said in *Stew-*

*art v. State,* 232 Md. 318, 193 A. 2d 40, with respect to incriminating admissions introduced at the trial, applies with equal force to admissions upon which the police acted in obtaining the arrest warrant. In that case we were faced with determining the use of statements in the nature of a confession obtained during a period of illegal detention. There was in that case, as here, no contention that the statement was not entirely voluntary. We held that an admission while made in custody after illegal arrest is no more inadmissible for that reason alone than a confession made in similar circumstances, and that the test with respect to both is voluntariness. If the admissions could have been used with impunity against Hall at a trial on charges of conspiracy or aiding and assisting an escape, then certainly they could be used by the State in forming a rational basis for the issuance of the arrest warrant. Consequently we hold that Hall was lawfully in custody at the time of the taking of his fingerprints, and that these were properly admitted in evidence.

The appellant in his final contention—questioning the sufficiency of the evidence to identify Hall as one of the participants in the robbery—tacitly recognizes that only if the fingerprints are inadmissible in evidence can the identity be seriously challenged. Since we have held the fingerprints admissible, we need comment only that there was sufficient evidence, if believed by the triers of the facts, to convict Hall of robbery with a deadly weapon.

*Judgment affirmed.*

Prescott, J., filed the following dissenting opinion.

For the reasons assigned in my dissent in *Stewart v. State,* 232 Md. 318, I dissent here.