# ANDERSON *v.* STATE

[No. 59, September Term, 1964.]

46

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*John R. Hargrove* for the appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *William T. S. Bricker, Assistant State's Attorney,* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

William R. Anderson was convicted in a non-jury trial in the Criminal Court of Baltimore under the first count of an indictment which charged him and others with breaking a storehouse with intent to steal goods valued at $100 or more. In

this appeal he contends that his arrest was unlawful, that two searches of his automobile were illegal and therefore certain items seized therein were improperly admitted in evidence, and that his confession was involuntary and should not have been admitted.

At the trial, the defendant Anderson did not take the stand or call any witnesses. Sergeant Wincke, of the narcotics squad of the Baltimore Police Department, testified as follows. At approximately 10:15 P.M. on December 10, 1963, while he and two other members of the squad were cruising, they observed an automobile being driven with a "homemade" rear license plate, but no official rear tag. The police car drew alongside, one of the officers "flashed" his badge, and the car stopped. The appellant was the operator, and four other men were passengers. All of the occupants alighted and the officers identified themselves as policemen. Some of the men said they knew the officers were members of the narcotics squad, and that they themselves "didn't fool with narcotics". The sergeant requested permission to search their persons and examine their arms, and he stated they all consented, and even insisted that their arms be inspected. The searches did not disclose any incriminating evidence. It was noted that the temporary license tag attached to the front of the car had expired. A check of the vehicle's registration card revealed that the appellant's wife owned the car.

One of the officers observed a checkwriter on the floor in the rear of the car and notified the sergeant. The latter then requested and was granted permission by the appellant to search the vehicle. The search disclosed the checkwriting machine in plain view on the rear floor and two cartons of cigarettes and two cigar boxes containing papers bearing the names of Jack and Ruth Garfinkle, 110 North Fremont Avenue and 2412 Crest Road, on the floor under the front seat. The appellant and the others were questioned with respect to the articles but all denied any knowledge of them. The police then arrested all of the occupants, seized the articles discovered in the search, and sent the appellants to Central police headquarters.

At Central, the police called Mrs. Garfinkle and on information obtained from her interrogated the appellant in reference to the articles seized and a breaking and entering at Garfinkle's

food market earlier that evening. He still maintained that he knew nothing about them. The articles were present during the interrogation. The appellant was first questioned from 11 P.M. to 12:50 A.M., after which his name was placed on the arrest docket. The record indicates that the questioning was carried on by only two of the three arresting officers. The appellant was further questioned from 2:01 A.M. to 2:40 A.M. and from 3:02 A.M. to 3:32 A.M., during which time he continued to deny any knowledge of the seized articles and the break-in. In the intervals between the question periods he presumably was returned to a cell. The final interrogation began at 3:55 A.M. and ended at 4:55 A.M., at which time the appellant gave a statement to the police, which was reduced to writing between 4:55 and 5:25 A.M. and signed. In the statement he confessed to breaking into the Garfinkles' store, with three of the other occupants of the car, and taking the articles found in the vehicle.

In the meantime, according to the testimony of Officer Rye, who was not one of the arresting officers, the appellant's car had been towed by the police to the department's impounding yard and searched. Certain additional items, not relevant here, were seized. The circumstances of this search are not before us.

Officer Rye testified that at a little after 4 A.M. on December 11 Sergeant Wineke instructed him to go out with the appellant and another police officer to look for an adding machine also taken from the store at the same time as the other articles, but dropped on the street near the store. However, when the machine could not be found, Officer Rye said he asked Anderson what he had used to break into the store and he replied that he had used a lug wrench which was under the front seat of his car. The officer said he asked for and was granted permission by the appellant to search his car for the lug wrench. They drove to the impounding yard, the officer found the lug wrench under the front seat of the vehicle, and the appellant identified it as the instrument which he had used to break into the store. The officer said the appellant was returned to the Central police station at about 4:45 A.M. During the trip the appellant was handcuffed.

The arrest of the appellant was probably lawful under the rationale of *Braxton v. State,* 234 Md. 1, 197 A. 2d 841 (1964), and *Jenkins v. State,* 232 Md. 529, 194 A. 2d 618 (1963), two cases in which the factual situations were rather analogous to that in the present case. (In the instant case the appellant was charged with operating an automobile without a valid registration plate attached to the rear, a misdemeanor under Code (1957), Art. 66½, sec. 34, punishable by fine or imprisonment, or both.) But it is unnecessary for us to decide whether the arrest was valid because it is apparent that there was ample evidence from which the trial judge could find, as he did, that the searches were consented to by the appellant, that the seizures were lawful, and that the confession was not the product of an overborne will. We have held that even if an arrest were unlawful this would not be enough, alone, to vitiate the trial and conviction of a defendant, *Hall v. State,* 233 Md. 378, 196 A. 2d 874 (1964) ; *Wright v. State,* 222 Md. 242, 159 A. 2d 636 (1960).

Here, the intital search of the appellant's automobile on the street occurred before the arrest, and could not have been affected by it. Since the appellant did not take the stand himself or call any witnesses on his behalf, the trial court had before it only the uncontradicted police testimony that the appellant consented to the search. The appellant contends that he merely submitted to the authority of the police, citing several United States Circuit Court of Appeals cases. But we do not find the cases in point, since here there was no evidence to rebut the testimony of Sergeant Wineke that the consent to the search was freely and voluntarily given. And there is no showing that the events which occurred before the giving of consent overbore the will of the appellant. Thus we cannot find the trial court was clearly in error in finding that Anderson consented. *Shields v. State,* 229 Md. 153, 182 A. 2d 348 (1962). The subsequent seizure of the articles was justified by the fact that all the occupants of the car disclaimed knowledge of them.

As to the search which produced the lug wrench, what we have said above with respect to consent is in point here also. Under the appellant's theory, the facts that he was under arrest and in the custody of the police, and handcuffed, made his con-

sent invalid. The cases cited by him as authority, *Stoner v. Calif.*, 376 U. S. 483 (1964) and *Preston v. U.S.*, 376 U. S. 364 (1964), are, however, both distinguishable. The question in those cases was whether the search was incident to a lawful arrest, not, as here, whether or not there was express consent. It appears from the testimony that the appellant's consent to search his car for the lug wrench was given after he had orally confessed to the crime and during a time when he was assisting the police in their attempt to find an adding machine taken during the store break-in. Cf. *Peal v. State*, 232 Md. 329, 193 A. 2d 53 (1963). We think the trial court's finding that the appellant freely consented to this search was supported by the evidence.

Finally, as to the voluntariness of the confession, the appellant maintains that his will was overborne at the time when he confessed, and to support this, he submits that he was interrogated "all night". The record does not disclose any unreasonably long periods of questioning, and there were rest periods. The appellant was 23 years of age and had completed the twelfth grade in school, and there was no showing that he was of other than normal intelligence. We have upheld statements given by younger persons resulting from more extended questioning than was present here. See *Green v. State*, 236 Md. 334, 203 A. 2d 870 (1964); *Bean v. State*, 234 Md. 432, 199 A. 2d 773 (1964). The appellant next refers to an inconsistency in the police testimony as to the time of day when he was taken out to find the adding machine but came back with the lug wrench. We think it rather obvious from the record that the trip was made after the appellant orally confessed, mentioning the fact that the adding machine had been dropped on the street, but before the confession was reduced to writing, since the written statement reflects the fact that the lug wrench was shown to the appellant. In any event, any inconsistency went to the weight of the evidence, which was a matter for the trier of facts to determine. *McKenzie v. State*, 236 Md. 597, 204 A. 2d 678 (1964). The appellant also points out that the articles seized at the time of the initial search of his vehicle were used in obtaining his confession. He argues that where the fruits of an illegal search are used to obtain a confession, the

confession is inadmissible, relying on *Fahy v. Conn.,* 375 U. S. 85 (1963). But here the articles seized were not the products of an illegal search, but of one consented to, and therefore *Fahy* is not controlling.

The appellant urges that the confession was inadmissible because he did not have counsel when he made it, citing *Escobedo v. Illinois,* 378 U. S. 478 (1964). This contention is without merit since there is no evidence that he ever requested counsel. See *Green v. State, supra,* and *Mefford and Blackburn v. State,* 235 Md. 497, 201 A. 2d 824 (1964).

Careful inspection of the record concerning the circumstances surrounding the giving of the confession reveals no evidence that it was not freely and voluntarily made. There is no evidence that the appellant ever asked to contact his family or requested food. He was not questioned by relays of officers. According to the police testimony and the written confession itself, the appellant was advised that his statement must be voluntary, that there would be no threats or promises, and that it could be used in a court of law against him. There was no contradictory evidence. The trial court's finding that the confession was voluntary was supported by the evidence.

*Judgment affirmed.*