## HAROLD CLIFTON JULY *v.* STATE OF MARYLAND

[No. 299, September Term, 1968.]

*Decided March 25, 1969.*

*Robert J. Colborn, Jr.,* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, State's Attorney for Prince George's County,* and *Robert J. Woods, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant, a juvenile at the time he raped an 82 year old widow and burglarized the dwelling in which she resided alone, claims that his convictions should be reversed and his sentences totaling 30 years set aside because a card on which the police had rolled an inked impression of his fingerprints was admitted in evidence in error.[1] The sole ground for the allegation of error is that his arrest was unlawful and that the fingerprints were illegal fruit of the arrest, inadmissible under the principles enumerated in *Mapp v. Ohio,* 367 U. S. 643.

In *Hall v. State,* 233 Md. 378, 382 the Court of Appeals said:

> "That the police may fingerprint one held in proper custody is no longer open to question. Many jurisdictions have so held in the face of objections under both the Fourth and Fifth Amendment provisions of the Federal Constitution. It has been the law of this State since 1909 when we decided *Downs v. Swann,* 11 Md. 53 * * *."

---

1. The Juvenile Court waived jurisdiction on the burglary charge. The appellant was indicted with three other youths for the rape and with one other for the burglary. He was tried alone on the consolidated charges by a jury in the Circuit Court for Prince George's County.

The appellant in *Hall* did not challenge this nor does the appellant here; it is still the law of this State. See *Hall v. Warden,* 244 Md. 731.

In the instant case there was evidence on the issue of the legality of the arrest from which the lower court could properly find that the police had received a report of the crimes and a description of the felons. One of the officers receiving the report, leaving two officers to continue the investigation at the scene, left to search for the participants. He shortly returned and said he saw youths answering the description of the perpetrators in a bowling alley. He and Corporal Yorke Flynn went to the bowling alley. Flynn looked them over and accosted them, told them that a crime had been committed, that the clothing they wore answered the general description of the perpetrators and asked if they would come back to the scene. "But I advised them they didn't have to if they didn't want to. * * * If it is found that you are not involved you would be free to go if you want. As a matter of fact, you can go now if you wish * * * They agreed to go back with me. Of course they were not under arrest. I didn't search them or handcuff them or anything. They followed me out to the car. As we were walking out to the car I dropped back a little bit and as I did so July came

---

A motion to suppress evidence on the ground of an illegal arrest was made, heard and denied prior to trial. It did not expressly designate the fingerprints taken from the appellant; it alleged, among other things, that the arrest was illegal and that "certain incriminating items were illegally taken from the person of the defendant." Although Md. Rule 729f provides that if such motion is denied the objection of the accused to the evidence sought .to be suppressed shall be preserved on appeal even though no further objection be made to the introduction of such evidence at the trial, it appears from the record that counsel for the appellant here specifically stated "no objection" when the card containing the rolled fingerprints of the appellant was admitted in evidence at the trial. Objection to the evidence now challenged thus appears to have been waived in any event.

up beside me and he dropped a gun on the ground. It was found to be a little starting gun, starting German gun." The officer recovered the gun and arrested July, the appellant. We state that Flynn arrested the appellant because we think it clear that from this point the appellant was under arrest. Flynn testified that the appellant got in the car, that had the appellant or his companion asked to get out of the car after the gun was dropped he would not have let them out and that the appellant was under arrest "after he dropped the gun". He did not tell him that he was then under arrest "but if he had wanted to go after he dropped the gun I wouldn't have let him go". He took them back to the scene of the crime, Detective James Fitzpatrick arrived and Flynn turned them over to him. Flynn then went into the house and later took them to the police station. Apparently Detective Fitzpatrick was not then aware of what had occurred in the presence of Flynn. He testified that he arrested them, under the impression that the appellant had not been arrested. He said, however, that the gun "was turned over to me that had been dropped by the Defendant Harold July". That Flynn did not tell the appellant he was under arrest at the time the gun was dropped was not material nor was the fact that Fitzpatrick may have again "arrested" him. There is no formal ritual which must be observed to constitute an arrest. The appellant's liberty was restrained from the moment he dropped the gun and he was thereafter in custody.

The rule is that a warrantless arrest is valid where an officer has probable cause to believe that a misdemeanor has been or is being committed in his presence or view, and that the arrestee is the misdemeanant. *Salmon v. State,* 2 Md. App. 513, 522. Carrying a concealed weapon is a misdemeanor. Md. Code, Art. 27, § 36. When the appellant dropped the weapon, which had been unobserved by the officer until it was dropped, he had probable cause to believe that the appellant, in the officer's presence had been carrying it concealed. Thus the arrest was valid. *Ramsey v. State,* 5 Md. App. 563; *Crosby v. State,* 2 Md. App. 578. The arrest being valid, the appellant was in lawful custody at the time of the taking of his fingerprints, and they were properly admitted in evidence.

We think it advisable to note that the Federal Constitution's

Fifth Amendment privilege against self incrimination offers no protection against compulsion to submit to fingerprinting. It protects a person only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. Compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it. Fingerprinting, photographing, measurements, speaking or writing for identification, appearing in court, assuming a stance, walking or making a particular gesture, for example, are "real or physical evidence." *Schmerber v. California,* 384 U. S. 757, 760-765. Nor do we think that fingerprinting of an accused is *per se* a denial of due process of law. Even the obtaining of evidence by intrusions in the human body, as by the withdrawal of blood, (the obtaining of fingerprints is no such intrusion) when done by acceptable means and under proper circumstances, does not offend that "sense of justice" of which the Supreme Court spoke in *Rochin v. California,* 342 U. S. 165. *Breithaupt v. Abram,* 352 U. S. 432. In *Schmerber,* at 760, the Court said that *Breithaup* "requires the rejection of petitioner's due process argument." [2]

We also point out that we do not reach the precise question of whether the taking of fingerprints of a suspect or accused is a search and seizure within the contemplation of the Fourth Amendment to the Federal Constitution. In *Hall v. State, supra,* at 382, the Court stated that if fingerprints were obtained when a person was illegally held, "[t]his would raise a serious question as to whether the fingerprints were * * * illegal fruit inadmissible under the principles enumerated in *Mapp v. Ohio,* 367 U. S. 643," but it did not decide the question. In *Schmerber v. California, supra,* the Court made clear that "compulsory administration of a blood test * * * plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment * * * Such testing procedures plainly constitute searches of 'persons', and depend antecedently upon seizures of

---

2. In *Hall v. Warden,* 244 Md. 731 one of the contentions in the post conviction petition was that the admission of his fingerprints was a violation of due process of law. The Court considered it as finally litigated on direct appeal.

'persons' within the meaning of that Amendment." 384 U. S. 767. But bloodletting involves an intrusion into the human body while fingerprinting does not. We do not think that the holding in *Schmerber* or its rationale compels a finding that fingerprinting is a search and seizure under the constitution. See *Simms v. State,* 4 Md. App. 160, 172, note 12. Federal and state cases in other jurisdictions have not clearly decided the issue although the great majority hold that if the arrest was legal fingerprinting is proper. Generally the rationale of the opinions is that there is a general right of the authorities charged with the enforcement of the criminal law to employ fingerprinting as an appropriate means to identify criminals and to detect crime, which is consistent with the rationale of *Downs v. Swann, supra.* See *United States v. Kelly,* 55 F. 2d 67 (2nd cir.) ; *United States v. Krapf,* 285 F. 2d 647 (3rd cir.) ; *United States v. Iacullo,* 226 F. 2d 788 (7th cir.) ; *Napolitano v. United States,* 340 F. 2d 313 (1st cir.) ; *United States v. Thompson,* 356 F. 2d 216 (2nd cir.) ; *Gentile v. Florida,* 190 So. 2d 200 (Florida). cf. *Bynum v. United States,* 262 F. 2d 465 (D.C.cir.). And see the case note entitled "Excluding from Evidence Fingerprints Taken After an Unlawful Arrest", 69 Yale L. J. 432 (1960). We shall decide the question when it is squarely before us.

*Judgment affirmed.*