J. Irwin Shapiro, J.
This is a motion by the defendant James Logan for an order to suppress evidence premised on the ground that it was obtained by an illegal search and seizure.
It has been briefed by the parties on the theory that the question here is whether there was an illegal search and seizure. However, the real question posed by this motion is whether this court has the power, on a pretrial motion such as this, to pass upon the legal and factual validity of a confession by a defendant, allegedly coerced, pursuant to which confession he made disclosure of the existence of certain contraband (a revolver), disclosed its hiding place and turned it over to the police. An answer to the question of law thus required to be passed upon necessarily involves a recitation and analysis of the facts.
The defendant was indicted on February 28,1963 for the crime of possessing a dangerous weapon as a felony (2 counts). The first count referred to a 38-caliber Iver Johnson revolver, a gun used in a robbery on January 11, 1963. That count was dismissed, on consent of the District Attorney, because the only legal proof in support thereof before the Grand Jury was the defendant’s admission to the police officers (People v. Ledyard, 32 Misc 2d 714).
The second count referred to a 22-caliber revolver and is the subject matter of this motion.
A hearing was held on May 13, 1963, and the facts are not materially in dispute.
On January 11, 1963, a robbery was committed in the County of Queens. Within minutes after the commission of the crime two persons — Both and Supino — were apprehended by the police and the Iver Johnson revolver was recovered nearby. Both, in his admissions to the police, stated that the revolver used to perpetrate the crime had been given to him on the previous day by the defendant Logan and that Logan knew that he, Both, “ was going to pull a job ” but did not know how, when or in what manner. Both also stated that defendant Logan told him that he had another revolver.
The police then want to Logan’s home without an arrest warrant or a search warrant. Upon ringing the door bell one Jerry Gearney who was present in the apartment, as were several other people, including defendant’s brother, attempted to frustrate their entry into the apartment by directing them to another floor, but the police officers, upon seeing and recognizing defendant Logan behind Gearney, barged in uninvited.
*595 Logan was questioned, in the kitchen, with respect to the revolver recovered at the robbery and, according to the officers, admitted he had given it to Roth on the previous day; that he knew Roth was going to do “a job ”, but did not know how, or when, or in what manner. He was then placed under arrest.
Upon being questioned about the second revolver the defendant repeatedly denied knowledge of any such instrument. One of the police officers then told the defendant that unless the revolver were turned over to him everyone in the house, including his mother (who had arrived in the meantime) would be taken into custody and taken to the police station. The defendant thereupon admitted possession of the revolver, showed the police where it was, and turned it over to them.
The facts make it obvious that the police had probable cause to believe that the defendant was involved in the robbery. Roth’s statement to the police admitted his own part in the crime and involved the defendant therein. A reasonable and prudent man could readily come to the conclusion that a person confessing the commission of a crime would not, under such circumstances, have any purpose to misstate the facts by dragging in an innocent person. It is not as though Roth denied his own guilt and tried to implicate another, but is a situation where upon being caught in the criminal act he admitted it and told the whole story. Since 111 Probable cause ’ does not require knowledge of evidence establishing guilt but only of such facts and circumstances or of reasonable trustworthy information as would warrant a prudent man in believing that the offense had been or is being committed” (People v. Francis, 31 Misc 2d 503, 504; Brinegar v. United States, 338 U. S. 160; Carroll v. United States, 267 U. S. 132), the police were warranted in accepting and acting on Roth’s story. Thus the officers had every right to ‘ ‘ barge in ’ ’, upon seeing the defendant in the apartment, since admittance had been at first refused by Gearney, who attempted to mislead them (Code Crim. Pro., § 178).
Thus the entry by the police was perfectly legal and when the defendant admitted his activities in relation to the revolver used in the robbery the arrest made at that moment was proper. Ordinarily at such a point a reasonable search of the premises, “incident to a lawful arrest” (Ker v. California, 374 U. S. 23; People v. Loria, 10 N Y 2d 368), could be made in an effort to discover instrumentalities of the crime itself, but not of other things to be used merely as evidence that the crime had in fact been committed (Takahashi v. United States, 143 F. 2d 118, 123). *596 Here, however, the fruits of and the instrument used in the crime — the robbery — had already been recovered by the police and so far as that crime was concerned there was no need nor reasonable ground for a further search. The fact that Both had told the police that defendant Logan had told him that he had another revolver could not be utilized as probable cause for a search of the defendant’s home in an effort to discover that revolver. Both had never seen the second revolver and the information with regard thereto, passed on by him to the officers,. had no bearing on the crime that had been committed by Both. In addition, the possession of the second revolver might constitute a misdemeanor and not a felony (Penal Law, § 1897), in which event the right to arrest and search would be completely absent, the crime not having been committed in the presence of the police.* Therefore, in the absence of any other pertinent circumstances, a search of the defendant’s home in this case, without a warrant, would have been improper and unlawful.
As the facts make clear, however, there was no search by the police but rather a surrender of the revolver by the defendant after he had admitted his possession thereof and disclosed its hiding place. The question for determination therefore is whether that admission, disclosure and surrender were obtained by compulsion and whether I have the right to pass upon that issue on this pretrial motion.
Until and unless the law is further changed by the decisional process, the police officers had a legal right to question the defendant with regard to the second gun, even though he was then under arrest.** If he then voluntarily admitted his possession thereof and voluntarily surrendered it to the police both his admission and the revolver would be legally admissible against him on the trial and there would be no issue to be determined on this motion. (Code Crim Pro., § 395; People v. Rogers, 18 N. Y. 9; People v. Perez, 300 N. Y. 208; Wilson v. United States, 162 U. S. 613, 623.) However, it is undisputed — in fact the police officer so testified — that the defendant after continually denying the existence of a second revolver admitted its existence and .surrendered it only when he was told by the officers that *597 everyone in the apartment (including his mother) would be taken into custody and taken to the police station if it were not produced. Then and only then did the defendant produce the revolver.
In People v. Shelton (151 Cal. App. 2d 587, 588) the District Court of Appeals in the State of California in a somewhat similar situation (but upon a record made at and not in advance of trial) said: ‘ ‘ Appellant at first denied any criminal activity and said that he was not the occupant. The officers suggested that if he had no right to be on the premises they might have to arrest him for burglary. Later appellant’s wife arrived and the officers told her that if her husband did not confess they might arrest her. She then talked to appellant and he made a confession which the court admitted in evidence. We agree with appellant that the confession was not voluntary. Coercion of a confession by threat to arrest a near relative unless the accused admits his guilt renders the confession involuntary. (People v. Mellus, 134 Cal. App. 219.) ”
In the People v. Mellus case (supra, pp. 225-226) the court in discussing the admissibility at the trial of a confession obtained under such circumstances said: 1 ‘ Much consideration must be given to the determination of the trial court from the attendant circumstances, that the confession is voluntary, yet on the other hand if it satisfactorily appears, as it does in this case, that the sheriff had stated that if the defendant did not tell all about what took place, he would have to look up the mother of the defendant, so clearly and convincingly appears from the record that we cannot escape the conclusion that the court erred in the admission of the confession of the appellant. We cannot overlook the natural ties of affection which would induce almost anyone to shoulder all the burden attendant upon the commission of any offense in order to relieve his mother from being confined in a prisoner’s cell on a charge of theft. The threat in this case is plain and explicit. That the prisoner was told that he need not talk unless he so desired becomes immaterial in the face of the threat made by the officer preceding the appellant’s confession.”
I am not unaware of the fact that in People v. Carrol (18 A D 2d 934) the court said: “ The question presented is whether a statement or confession given by defendant was admissible in evidence. Defendant had been arrested in connection with three burglaries. Subsequently his wife was found by the police driving an automobile in which some of the stolen articles were discovered. She was taken to the police station, and defendant was advised by the police that, if he gave a statement implicating *598 himself in the crimes, his wife would be released .and no charges would be pressed against her. The court admitted the statement in evidence but left to the jury the question of whether or not it had been made voluntarily. In our opinion, whether the statement was voluntarily given or whether it was coerced by the promise of the police to release defendant’s wife, presented a question of fact for the jury; and, under the circumstances, it was not inadmissible as a matter of law (Stein v. New York, 346 U. S. 156, affg. People v. Stein, 303 N. Y. 856).”
All that the Appellate Division did in the Carrol case was to determine that ‘ ‘ whether the statement was voluntarily given or whether it was coerced by the promise of the police to release defendant’s wife, presented a question of fact for the jury; and, under the circumstances, it was not inadmissible as a matter of law ’ ’.
If I have the power to pass on the validity of the confession in this case the holding in Carrol precludes a determination that the confession here, followed by the production of the revolver, was not involuntary as a matter of law but it nevertheless remains clear that there is an issue of fact with regard to the voluntary nature of the defendant’s acts and statements.
In my opinion, the unjustifiable, and therefore legally improper threat to detain and take everyone in the household to the police station, in effect to arrest them, was just as coercive as if the truth had been beaten out of Logan. I find as a fact that in the setting in which the statements were made by the police they were intended to be and were understood by defendant as meaning — and that he was intended to be persuaded to believe and, in fact, did believe — that if he did not yield to the importunity of the officers they would subject his relatives and acquaintances to the indignities and harassment of arrest, without any justification for such action; that solely through force of the psychological coercion thus exerted, defendant confessed possession, conducted the officers to the hiding place of the weapon and delivered it to them, and that such confession and surrender were involuntary and were made only and solely to avert translation of the malevolent forecast into action.
An objective estimate of defendant’s situation — by someone not obliged to occupy it — might seriously question whether the officers really intended to engage in a course of criminal conduct if Logan did not give in to their demands. His credulity is merely a factor of credibility, decided in his favor. It is to be hoped that the police were bluffing and that they did not really contemplate the commission of oppression (see Penal Law, § 854, subds. 1, 4) but whatever their intention in the matter. *599 their action brought them to, if not over, the brink of criminal coercion (Penal Law, § 530, subd. 1). And, for obvious reasons, the District Attorney makes no effort to give the transaction the complexion of a search by consent (see, e.g., United States v. Kidd, 153 F. Supp. 605, 610, and authorities cited). Ordinarily, a trial jury would decide the issue of fact here presented (People v. Carrol, 18 A D 2d 984, supra), but, under the circumstances, I hold that the responsibility and power of decision are mine (Code Crim. Pro., § 813-c) and have exercised them accordingly.
My confidence in the justice of the findings of fact made in this ease is not, however, backed by an equal certainty of the controlling procedural law because of the involvement of the effort to apply the recently imposed change of constitutional policy ‘ ‘ in an atmosphere of uncertainty ’ ’ created by divergence of viewpoint in the authority that imposed it (see the concurring opinion of Justice Harlan, in Ker v. California (374 U. S. 23). In Ker (supra, p. 4613) the court said: “In Mapp v. Ohio (367 U. S. 643) at 646-647, 657, we followed Boyd v. United States, 116 U. S. 616, 630 (1886), which held that the Fourth Amendment, implemented by the self-incrimination clause of the Fifth, forbids the Federal Government to convict a man of crime by using testimony or papers obtained from him by unreasonable searches and seizures as defined in the Fourth Amendment. We specifically held in Mapp that this constitutional prohibition is enforceable against the States through the Fourteenth Amendment. This means, as we said in Mapp, that the Fourth Amendment £ is enforceable against them [the states] by the same sanction of exclusion as is used against the Federal Government, ’ by the application of the same constitutional standard prohibiting £ unreasonable searches and seizures. ’ ”
But “ (w)hat is a reasonable search is not to be determined by any fixed formula * * *. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case.” (United States v. Rabinowitz, 339 U. S. 56, 63.) The “ intimate relation” of the freedoms from the invasions of privacy and from convictions based upon coerced confessions, and the complementary roles of the independent constitutional provisions providing assurance against conviction on unconstitutional evidence (Mapp v. Ohio, 367 U. S. 643, 657, supra) may or may not make a compulsion to admit possession and .surrender of an article of contraband tantamount to its procurement by an unlawful search and seizure, although it is undeniable that the verbal product must be excluded because *600 obtained in violation of the Due Process Clause of the Fourteenth Amendment (Rogers v. Richmond, 365 U. S. 534, 540-541).
I hold that the New York suppression procedure (Code Grim. Pro., § 813-c), which now operates in advance of trial to exclude the physical and tangible results of property obtained by the police as a result of an unlawful search and seizure, is broad enough to encompass, within its scope, the suppression of such tangible evidence when it is obtained by the police as a result of a confession extracted from a defendant in violation of his constitutional rights. In that regard the obtaining of the property by the police is the equivalent of an unlawful search and seizure.
My basic consideration for so holding is the expedition of the business of the courts by avoidance, wherever possible, of the trial, error, appeal and retrial formula. In the field of search and seizure, it is favored by suspending determination of an appeal pending the resolution of factual issues and the application of the controlling principles of law on a hearing in the court of original jurisdiction (People v. Coffey, 11 N Y 2d 142, 147-148) and by reversal and dismissal where the facts are unchangeably established by the trial record (People v. O’Neill, 11 N Y 2d 148, 154; People v. Yarmosh, 11 N Y 2d 397, 401). The suppression-procedure itself serves the same purpose when it defeats the prosecution before trial, and the extension of its use through the interpretation adopted on this motion would, in proper cases, further reduce the trial load of the courts.
Here, the forcible and compulsory extortion of an admission to be used as evidence against the defendant, in my opinion, comes squarely within the condemnation both of our fundamental and statutory law (U. S. Const., 4th, 5th and 14th Arndts.; N. Y. State Const., Art. I, §§ 6 and 12; Code 'Crim. Pro., § 395).
The production of the gun by the defendant under such circumstances, was, if not legally, at least factually, of an involuntary nature. (People v. Rodrigues, 11 N Y 2d 279; People v. Corbo, 17 A D 2d 351; Wong Sun v. United States, 371 U. S. 471.) State law enforcement officers are constitutionally forbidden to procure evidence of crime by “methods too close to the rack and screw to permit of constitutional differentiation” and the ban recognizes no distinction between “ real evidence ” (including contraband) and coerced confessions (Rochin v. California, 342 U. S. 165, 172-173). Opinions may differ about which of the constitutional mandates ought to be invoked to forbid their use. In the Rochin case the reversal of the conviction for possession of the narcotic was grounded on police methods offensive to the Due Process Clause of the Fourteenth Amendment to the United States Constitution (p. 174). But other members of the *601 court thought the State action to have been violative of the Fifth Amendment because of its compulsion to self incrimination (pp. 175, 179).
However, it is only the theory but not the basic requirement of exclusion that may be in doubt in the instant case. The central factual conclusion, of course, is that the confession and surrender were coerced.
The requirement of obedience, by the court, to the Constitutions, both State and Federal, is not lessened because the defendant, though young, appears to be one whose criminal career is only in its incipience and whose future activities do not bode well for society.
The question is not the defendant’s basic guilt or innocence. The right of all persons accused of crime not to have evidence used against them which has been obtained in violation of their constitutional rights is the essence of a free society and is the right of all of the inhabitants of our land. Only by insisting upon a scrupulous adherence to an orderly and legal procedure by all of those involved in the administration of the law, including the courts, can innocent people be protected against procedures which might at sometime deprive them of their life or their liberty.
Having come to the legal conclusion that articles obtained by the police following upon and as a result of a coerced confession may be equated with an unreasonable search and seizure, it necessarily follows that the same procedural methods for their suppression prior to trial, should be utilized as in the case of an illegal search and seizure. Where there is a charge of an ‘ ‘ unlawful search and seizure ’ ’, the mandate of the statute is that “The court shall hear evidence upon any issue of fact necessary to determination of the motion ” (Code Crim. Pro., § 813-c; italics supplied). This court having factually concluded that the revolver in question was produced following, and as a direct result of, a confession coercively obtained, the motion to suppress must be and is granted.
In view of the novelty of the issue here determined and its possible effect upon the administration of the criminal law, it is respectfully suggested that the District Attorney avail himself of the appeal privilege provided for by subdivision 6 of section 518 of the Code of Criminal Procedure.

 After July 1, 1963 toy virtue of chapter 580 of the Laws of 1963 which amends section 177 of the Code of Criminal Procedure, a police officer may make an arrest for a misdemeanor not only when it is “ committed or attempted in his presence ” but also when he “ has reasonable grounds for believing that ” it “ is being committed in his presence

 (Watts v. Indiana, 338 U. S. 49, 61, 62; but, see, People v. Wallace, 17 A D 2d 981; Haynes v. Washington, 31 L. W. 4492 and dissenting opinions in Cicenia v. Lagay, 357 U. S. 504 and Crooker v. California, 357 U. S. 433 for tendency in opposite direction.)