Dominic S. Rinaldi, J.
The defendant is a physician who is charged with abortion under indictments returned in November, 1960. He now moves under section 813-c et seq. of the Code of Criminal Procedure to suppress evidence obtained by telephone wire tapping and by a search of his private office. The defendant’s private office telephone was tapped by police officers from July 29 to September 2, 1960 pursuant to an ex parte order issued on July 28, 1960. It is conceded by the People that the information obtained from such wire taps resulted in the leads which culminated in the defendant’s arrest for abortion at his home on the night of September 2-3,1960. At that time, a search was also made at his home and office. The arrest and search was made without a warrant.
This court conducted an extensive evidentiary hearing on the motion to suppress. There was made available to the court, in camera, the affidavits which were presented in support of the application for the ex parte wire-tap order, as well as other information.
There can be no serious dispute that pertinent New York statutes contemplate and authorize a review of wire-tap orders.
Section 813-a of the Code of Criminal Procedure, authorizing ex parte wire-tap orders, itself contemplates, by its incorporation of the constitutional standard '^reasonable ground ” (which is equivalent to “ probable cause ”), and by requiring preservation of the papers, that the matter shall be- subject to judicial review when necessary.
*405 Section 813-c et seq. of the Code of Criminal Procedure, re motions to suppress evidence, must be read in the light of the virtually identical Federal motion procedure after which it is obviously patterned. That Federal procedure, it is settled, includes motions to suppress wire-tap evidence. New York’s new motion procedure (§ 813-c et seq.) was adopted with the expressly declared legislative purpose of bringing this State into compliance with Federal constitutional search-and-seizure requirements under the Mapp case. (367 U. S. 643.)
Section 4506 of the Civil Practice Law and Rules (formerly Civ. Prac. Act, § 345-a), also adopted in an express effort by the Legislature to meet Federal standards, makes inadmissible in criminal prosecutions evidence and evidentiary leads obtained by illegal wire tapping. Therefore, when, as here, a defendant in a criminal prosecution invokes the new motion to suppress procedure in aid of his rights under the new section 4506 of the Civil Practice Law and Rules, it is impossible to see how the court can avoid the duty of determining whether a elaimedly legal telephone wire tap, assertedly authorized under this State’s permissive ex parte wire-tap legislation above cited, was in fact legally authorized or not under the statutory standards of said permissive procedure. The court is aware of the contention of the People that a prior proceeding which was commenced before Mr. Justice Arkwright who denied the motion to vacate the wire-tap order is now a bar to the instant motion (People v. Cohen, 41 Misc 2d 158). The court finds that such proceeding does not affect its right to pass upon the validity of the wiretap order. Such prior proceeding did not avail itself of the processes of section 813-c et seq. of the Code of Criminal Procedure and in any event never reached the merits of the issue as to the validity of such order. Mr. Justice Arkwright in his opinion denying the application before him clearly stated, and this court is in complete agreement, that our courts have the inherent power to reconsider the issuance of a wire-tap order if perjury or error be shown in the original supporting affidavits or for any other cogent reason. Since the defendant at that time could only furnish limited information to him, his denial was solely on procedural grounds. The appeal from his order was dismissed by the Appellate Division, Second Department (N. Y. L. J., April 18, 1963, p. 16, col. 5) and leave to appeal to the Court of Appeals was denied on July 10, 1963 by Fuld, J., and the court en banc (13 N Y 2d 595).
That being the case, this court deems itself under a duty to consider the issues raised by this motion, on the merits. In order to do so, it must determine whether the “ reasonable ground ” *406 requirement of section 813-a of the Code of Criminal Procedure was satisfied in the issuance of the wire-tap order.
The order was issued on July 28, 1960 by a former Justice of this court on the supporting affidavits of Kenneth J. McCabe, Chief Assistant of the District Attorney, now deceased, Alvin Gr. Eosen and his “ girl friend ” Audrey Salzman. These two persons were the subject of an investigation by the District Attorney in crimes involving forgery, burglary and arson, none of which concerned the defendant in this case, in which it was claimed they had participated. During the course of such investigation, Eosen, in an obvious attempt to curry favor with the police, volunteered information that the defendant was conducting an “ Abortion Mill ”. The information which he furnished to the police and which was incorporated into the supporting affidavits was as follows: That Eosen and his “ girl friend ” had at one time visited the defendant to arrange for her abortion; that they could not agree on price; that they left and did not return because she later discovered that she was not pregnant; that a friend of the ‘ ‘ girl friend ’ ’ had once been aborted by the doctor in July or August of 1958 and subsequently again a year later and also in October or November of 1959. Eosen stated and it was so set forth in the supporting affidavits that he had obtained this information from his “ girl friend ” who in turn had learned of this from her friend. No supporting affidavit was obtained from the “prolific” friend. Thus supporting affidavits based to a great extent on hearsay twice removed and on events which had transpired a long time prior thereto, became the basis for the issuance of the wire-tap order. There is also a serious question as to whether or not the police had previous sufficient other dealings with the informers which would have led them to depend upon the reliability of their information. In any event, the police testified that they proceeded to “ tap ” the office telephone of the defendant and as leads were obtained, they questioned certain females who were observed leaving his office and obtained statements from them which led to the eventual arrest and indictment of this defendant.
In the light of the foregoing, was there “ reasonable ground ” to believe that “ evidence of crime may thus be obtained” in order to comply with the statutory requirement under section 813-a?
It is elementary that there can exist no “probable cause ” to search for mere “ future ” crimes and case law as to “ probable cause ” is concerned with “ past ” or “ present ” crimes. (Brinegar v. United States, 338 U. S. 160.) At the most therefore, wire tapping may only be permitted upon a showing which *407 meets the tests of ‘ ‘ probable cause ’ ’ that a crime has been or is being committed. Under our law as it is presently constituted, law enforcement officers are on the horns of a dilemma. Wire tapping is a crime under Federal statutes but is permissible in our State if made with the sanction of a court order. And yet, if such sanction is obtained and “taps” made, the question presents itself whether those officers connected with such wire tapping may not be prosecuted for the violation of a Federal statute. Wire-tap orders are therefore issued with great reluctance and it has become the common practice to avoid issuance if other means are available to law enforcement agencies to obtain the required results.
The reliability of the informers in order for the issuing court to determine for itself “reasonable grounds ” or “probable cause ” becomes of paramount importance. If the police vouch for such reliability facts must be stated and brought to the attention of the court to satisfy it that such is the case. The informers, Alvin Rosen and Audrey Salzman at the time they gave information to the police concerning this defendant were themselves deeply enmeshed in what was apparently a major ring of burglars, arsonists and forgers. It is true that they “ accurately ” confessed their own misdeeds and those of their accomplices in which they had already been implicated. They, at no time, however, previously informed the police as to crimes in which they themselves were not implicated. On that basis, the police had no criteria to judge their reliability concerning information as to this defendant. Vouching as to their reliability had no basis in fact, “ the affiant must * * * demonstrate that his informant has established a reputation for reliability so as to be worthy of belief ” (United States v. Ramirez, 279 F 2d 712, 715 [0. A. 2d, I960]).
Judge Sobel of this court, in his recent New York Law Journal articles (Oct. 29,1963, p. 4, col. 2) referred to “ the rather strict standards of reliability of informers ’ ’ citing the leading cases of Draper v. United States (358 U. S. 307); Jones v. United States (362 U. S. 257); Henry v. United States (361 U. S. 98). One of our leading cases, People v. Coffey (12 N Y 2d 443, 452) along the same lines specifies that ‘ ‘ Simple, untested rumor is not ground enough nor * * * is untested information from a person of no established reliability * * * or suspicion alone * * *. Substantiation of information can come either from the informer’s own character and reputation or from the separate, objective checking of the tale he tells.” Although these decisions and a multitude of others in the same vein, involved search and seizure, the same standards, at the least, *408 must be applied to wire-tap orders. Both types of order are obtained ex parte. However, execution of the search warrant necessarily reveals its issuance and objectives. The same may not be said of wire-tap orders which are carried out surreptitiously except in those rare instances where the object of the wire tap learns of it through accident. It would not be amiss for the court to state that, if at all, the standards to test the advisability of issuing a wire-tap order should be much more stringent than thos.e applied to search warrants.
The court cannot find anything in the original wire-tap affidavits which meet the foregoing tests as to statutory requirements of “reasonable grounds” and “reputation for reliability ’ \ It must therefore conclude that the wire-tap order was issued contrary to statutory and settled law and the said order is hereby vacated:
The wire-tapping activity from July 29 to September 2, 1962 being thus determined to have been illegal m toto, all evidence and all evidentiary leads obtained or derived from the wire tap, and all evidence obtained or derived from such leads, are hereby ordered suppressed and inadmissible pursuant to section 4506 of the Civil Practice Law and Rules. In order that there be no doubt as to this, the court finds, from the testimony at the hearing herein, and from the reasonable inferences based on the aforesaid, that the People obtained from the wire taps, in the case of each of the females, whose alleged abortions are the subject of these indictments, the original information or leads upon which subsequent charges of abortion, or upon which subsequent investigation in turn leading to charges of abortion, were based. 1
The court finds further, and in conjunction with the findings above stated, that the People’s claim that the original information or leads referred to in said above finding were obtained from surveillance or other police activity not inclusive of wire tapping, is not supported by any evidence other than purely conclusory assertions of the police witnesses. The latter witnesses not having testified concerning any details or concrete circumstances whatever to support such conclusory claims of surveillance results, etc., and the evidence that the original information or leads came from wire tapping being strong and convincing, this conclusory -contention of the People is hereby found not to have been established.
The court further finds that the list of names of females which Policewoman O’Meara brought with her to the defendant’s office on the night of September 2-3, 1960 for the purpose of checking said list against defendant’s private office records, consisted *409 either of names obtained exclusively in the first instance from the wire taps, or of names obtained by means so inextricably connected with the wire taps as to be required to be deemed a product thereof as a matter of law and for the purposes of the instant proceeding. The only inference permitted by the testimony and by the other records of this proceeding is that the aforesaid list of names was in itself in fact either a sole product of the wire tap, or a joint product of the wire tap plus the defendant’s office records (especially the lost diary or desk calendar as to which see further infra); or was the sole product of said office records, and that said list to the extent that it was the product of said office records was made up during or after the search of the night of September 2-3,1960 rather than being in existence prior thereto as claimed by the People.
The People admit, and the court finds that during the search of September 2-3,1960 the People seized a diary or desk calendar from the defendant’s private office, and that said diary or calendar subsequently disappeared while in the custody of the People.
The People also admit, and the court finds that during the search of the night of September 2-3, 1960 the People made a detailed examination of the file of patients’ index cards in the defendant’s private office, and that the police took written notes thereof. In this connection the court further finds that the People have not produced such written notes in their entirety at the within hearing.
The People have not produced in this hearing any written notes or memoranda as to the contents of the lost diary or desk calendar. In the over-all circumstances of this case, the conelusory assertions of the police witnesses that no information relevant to the issues of this proceeding was obtained by the People from the lost diary or desk calendar, cannot be taken probatively into account in the findings herein.
From the aforesaid findings it is concluded that the People obtained either from the wire taps or from the search of September 2-3,1960, or from both of these in combination, their original information or leads upon which subsequent charges of abortion, or upon which subsequent investigation in turn leading to charges of abortion, were based in the case of each of said females.
Inasmuch as the arrest of the doctor was unlawful in that it was the fruit of wire-tap activity now found by the court to have been illegal, the subsequent search of defendant’s office immediately following his £ ‘ arrest ’ ’ was likewise unlawful. The People claim that the search was justified because the defendant invited *410 them to do so and consented thereto. There is a presumption against consent or waiver of a defendant’s constitutional right to be free from unreasonable search and seizure and the People have the burden of affirmatively establishing free and voluntary consent (Johnson v. Zerbst, 304 U. S. 458; Pekar v. United States, 315 P. 2d 319; United States v. Smith, 308 P. 2d 657, 663). The court finds that the People have failed to overcome this presumption and that the testimony concerning this phase of the proceedings, if anything, negates any such consent or waiver.
In view of the findings of the court, there is no need to make comment or evaluate the other points set forth in the briefs submitted by counsel for the defendant.
The motion is granted in all respects.