J. Irwin Shapiro, J.
This is a motion by the defendant Reuben Beshany, in which the remaining defendants join, “ for an order dismissing the charges contained in the complaints filed against the defendant on the ground that the same are *522 legally insufficient and without probable cause or, in the alternative, for an order suppressing the physical evidence and statements obtained from the defendant as a result of, or incidental, to the arrest of the defendant, pursuant to section 813-e of the Code of Criminal Procedure, on the grounds that the use of such evidence and statements by the District Attorney upon the trial will be contrary to law and in violation of the constitutional rights of the defendant ’
A hearing was ordered on the motion of the four defendants and the facts found by the court on the hearing are set forth as an addendum to this opinion and will be referred to hereafter on the questions of law involved only insofar as it is necessary to do so to make this opinion intelligible.
From the evidence adduced at the hearing it appears that certain tangible objects were obtained through a search and seizure — without a warrant — made as an incident to a number of arrests, also without warrants. It further appears that the ability of the law-enforcement officials to demonstrate the existence of probable cause for the arrest depends upon the admissibility of self incriminating statements made by the several defendants in the course of telephone communications intercepted by the police. The wire taps by which this was accomplished were authorized by orders of a Justice of the Supreme Court and the defendants now question the sufficiency of the warrant for the judicial sanction thus given to the eavesdropping by which their criminal activities and plans were found out.
Except as permitted by section 739, article 73 of the Penal Law condemns this form of eavesdropping as criminal. To be exempt from the ban, the interception — under the circumstances disclosed in this case — must be authorized by an ex parte order issued “ upon oath or affirmation of a district attorney * * * that there is reasonable ground to believe that evidence of crime may be thus obtained, and particularly describing the person * * * whose communications, conversations or discussions are to be overheard or recorded and the purpose thereof, and, in the case of * * * telephonic communication, identifying the particular telephone number * * * involved. In connection with the issuance of such an order the justice * * * may examine on oath the applicant and any other witness he may produce and shall satisfy himself of the existence of reasonable grounds for the granting of such application.” Such order is to be effective for the time specified therein, not exceeding two months, unless extended *523 or renewed by the Justice who signed and issued the original “ upon satisfying himself that such extension or renewal is in the public interest.” The order, together with the papers upon which the application was based, is to be delivered to and retained by the applicant but a true copy ‘ ‘ of such order ’ ’ is to be retained by the Judge or Justice issuing it. In the event of his denial of an application for the order, however, the Justice is required to retain “ a true copy of the papers upon which the application was based ’ ’ (Code Grim. Pro., § 813-a). One of the orders which authorized the interception in the instant case was obtained as an extension of a prior order made September 20, 1963.
In the application for that original order, an Assistant District Attorney deposed that on May 2,1962 one Carolyn Oelkers (also known as Caroline Coleman) had signed an affidavit alleging that three named men ‘ ‘ violated section 851 of the Penal Law in that defendants obtained money or property with her consent induced by the wrongful use of force or fear. That on May 22, 1962 the said Carolyn Oelkers * * * appeared as a witness before the Grand Jury and her testimony was in conflict with the statements made in the aforesaid affidavit and statements made to this office. That your deponent has been informed by the witness, off the record, not before the Grand Jury, that she committed perjury at the time she appeared as a witness before the Grand Jury. That your deponent believes on information and belief that a complaint has been made to the Nassau County Police, 4th Squad, Hewlett, New York. Your deponent is informed and verily believes * * * that such interception will enable the law-enforcement officials of this county to collect further evidence pertaining to the perjury, extortion, attempted extortion, bribery and the obstruction of justice in the aforementioned matter.”
The facts, if any, upon which the conclusions contained in the affidavit were based, were not disclosed by the affiant on whose application the interception order was issued. The District Attorney thereafter obtained another order, dated October 10, 1963, authorizing the interception of messages transmitted over two different telephone lines listed under the name of Jean Coleman, although installed for the same Carolyn Oelkers. The affidavit upon which the order was issued was almost identical, in its averments, with the affidavit upon which the order of September 20, 1963 was based except, of course, that it referred to two different trunk lines. The extension of the order of September 20, 1963 was effectuated *524 by an order dated October 21, 1963, continuing the interception of the same trunk as described in the original order and was likewise granted upon an affidavit making virtually the same allegations as those embodied in the affidavit in support of the original application. The somewhat unusual situation in which the court and the defendants are fully apprised of the content of the papers by which the interceptions were authorized came about when the Assistant District Attorney offered them in evidence. (The order of October 21, 1963 and supporting affidavit and the order of October 10, 1963 and supporting affidavit are People’s Exhibits 1A and IB respectively. The order of September 20, 1963 and supporting affidavit was by consent submitted to the court for its consideration after the hearing and is here deemed to be the court’s exhibit.)
All of the defendants were arrested on November 13, 1963. Thereafter, they were arraigned in the Criminal Court of the City of New York upon complaints charging defendant Oelkers with an “attempt to violate Sec. 71 Penal Law” about September 10, 1963 to November 13, 1963 at various locations in the County of Queens “ in that, with intent to procure her own miscarriage, she took drugs during that period and on November 13, 1963, went to premises 88-24 Merrick Boulevard for the purpose of having an abortion performed upon her person defendants Beshany, Feldman and Wenger were charged with an attempt to commit an abortion upon the person of Carolyn Oelkers by their concerted action (pursuant to their mutual plan) by which defendant Wenger had allowed the use of her apartment for the purpose and defendant Feldman accepted and held $500 for the purpose of paying defendant Beshany who, as Feldman knew, had agreed to perform the abortion upon defendant Oelkers for that money; under a separate complaint, all four were charged with a conspiracy to commit an abortion upon the defendant Oelkers. Pending further action in the Criminal Court upon these charges, the defendants moved, in this court, for an order suppressing the physical evidence and statements obtained from the defendants.
At the conclusion of the hearing the defense counsel moved for the exclusion of the contents of the brown bag and such other material evidence as was taken from the Wenger apartment on the evening of the 13th on the ground that they were products of an illegal search and seizure. He also moved for the exclusion of any statements made by the defendants, in view of the stipulated facts as to the timing of the attorneys’ calls to the police station.
*525 He also renewed his motion to strike from the record the evidence of the intercepted conversations because of the alleged illegality of the orders authorizing the eavesdropping.
In opposition, the District Attorney contended that the police had probable cause for the arrests which were made but agreed that if the wire-tap orders were ineffective ‘ ‘ everything falls by the wayside ’ ’. Although this ‘ ‘ opinion as to the law is in no sense a concession binding on the court(s) ” which may or may not accept the view thus expressed (People v. Mussenden, 308 N. Y. 558, 566, footnote 2), the court’s own analysis brings it to the same conclusion.
Upon the facts, as found, the reasonableness of the incidental search and seizure depends on the legality of the prior arrests, without warrants, and for the lawfulness of such arrests the District Attorney necessarily relies upon the products of the intercepted telephone conversations for otherwise the police can demonstrate no reasonable cause for believing that felonies had been committed by Allan Feldman and Carolyn Oelkers (Code Grim. Pro., § 177, subd. 4) in that the former had supplied and advised the Oelkers woman to take a drug, with intent to bring about her miscarriage (Penal Law, § 80, subd. 1) and that she, accordingly, had accepted and taken the drug, with that intent (id., § 81) or that they and others had, within the hearing of the officers, hatched a conspiracy to procure performance of an a/bortion upon Carolyn Oelkers, had performed overt acts in its furtherance and planned to do still other acts for the attainment of the criminal end (Penal Law, § 580, subd. 1; § 583; Code Crim. Pro., § 177, subd. 1).
If these items of incriminating evidence were obtained in violation of defendants’ constitutional rights (N. Y. Const., art. I, § 12) they could not be used to secure a conviction, for the law laid down in the Before (242 N. Y. 13) and Richter (291 N. Y. 161) cases has been annulled by the provisions of 4506 CPLR under which the products of unlawful wire taps are made inadmissible for any purpose in any civil or criminal action, proceeding or hearing except, of course, as against an unlawful eavesdropper upon his prosecution for that offense.
At the hearing, the District Attorney took the position that the legality of the interception orders could not be determined in this proceeding. His contention — that the exercise of discretionary power by the Justice who made the ex parte orders could not be reviewed by me as another Justice of the court— was based upon the opinions written in People v. Cohen (41 Misc 2d 158 [Arkwright, J.], app. dsmd. N. Y. L. J., April 18, 1963, p. 16, col. 5 mot. for lv. to app. den. 13 N Y 2d 595, *526 cert. den. 375 U. S. 985) and People v. Scardaccione (41 Misc 2d 433 [Heleand, J.]) the latter of which followed the views expressed by Justice Arkwright in the Cohen case. (People v. Golly (43 Misc 2d 122), not cited by the District Attorney, is also to the same effect. The facts in this case, however, put it within the area of Benanti v. United States (355 U. S. 96) rather than the framework of any of the cases just mentioned.
In the Cohen, Scardaccione and Golly cases, the pretrial motions by which the issue was raised were" frankly exploratory, seeking, rather than pointing out, foundational faults beneath the wire-tap orders. In this case, as in the Benanti case, the fact that a wire tap had been authorized and installed was a surprise disclosure occurring in the course of the presentation of evidence upon the trial of a different issue. In Benanti, the facts were elicited during trial, on cross-examination of the police and counsel promptly moved for suppression (355 U. S. 96, 99; see, also, United States v. Benanti, 244 F. 2d 389, 391). The Supreme Court held that the trial court had erroneously denied the motion because, notwithstanding the fact that the interception had been effectuated by local officers, under the authority of an order of the State court, the disclosure and use of the results of the interception violated the Federal Communications Act (U. S. Code, tit. 47, § 605) and exclusion was required, to discourage the practice. The procedure by way of suspension of the trial and preliminary hearing on the suppression motion in the Benanti case had earlier been established in Nardone v. United States (308 U. S. 338, 341-342). It was again employed in Goldstein v. United States (316 U. S. 114, 115) “ in accordance with the practice established in Nardone”. Said the Goldstein court (p. 120): “Although the unlawful interception * * * does not amount to a search or seizure prohibited by the Fourth Amendment, we have applied the same policy in respect of the prohibitions of the Federal Communications Act”.
The policy factors influencing the establishment of the procedure created by Nardone (supra, pp. 341-342) were these: ‘ ‘ Dispatch in the trial of criminal causes is essential in bringing crime to book. Therefore, timely steps must be taken to secure judicial determination of claims of illegality on the part of agents of the government in obtaining testimony. To interrupt the course of the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury’s attention. Like mischief would result were tenuous claims sufficient to justify the trial court’s indulgence of inquiry into the legitimacy of evidence in the *527 Government’s possession * * * Therefore claims that taint attaches to any portion of the Government’s case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government’s possession before its submission to the jury. And if such a claim is made after the trial is under way, the judge must likewise be satisfied that the accused could not at an earlier stage have had adequage knowledge to make his claim. The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding * * * including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges. ’ ’
These may be the considerations which led Justice Rinaldi, in granting the suppression motion in the very same Cohen case (42 Misc 2d 403, 405) passed on by Justice Arkwright, to conclude that settled Federal, procedure includes motions to suppress wire-tap evidence. At any rate, since the question of the validity of the various wire-tap orders is squarely raised by the evidence adduced on the hearing in this case, it seems to me that the expeditious administration of justice is better served by meeting and disposing of the issue here and now rather than suspending the hearing and referring the question back to the Justice who made the interception orders. We therefore arrive at a consideration of the merits of defendants’ claims that the wire-tap orders were fatally defective, both formally and foundationally.
The constitutional mandate — that “ ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained ” (N. T. Const., art. I, § 12) is firmed up by a statutory limitation on the class and rank of eligible applicants and a legislative direction that the judicial officer concerned “ shall satisfy himself of the existence of reasonable grounds for the granting of such application ’ ’, and he must extend or renew his order only ‘ ‘ upon satisfying himself that such extension or renewal is in the public interest ” (Code Grim. Pro., § 813-a). The terms ‘ ‘ reasonable grounds ”, “ reason to believe ’ ’ and ‘ ‘ reasonable cause ’ ’ are employed interchangeably, as equivalents in meaning to “probable cause” (see People v. Coffey, 12 N Y 2d 443, 450-451; Draper v. United States, 358 U. S. 307, *528 310 ; Riley v. State, 179 Md. 304; Allen v. Lindbeck, 97 Utah 471; State v. Greer, 130 W. Va. 159; State v. Brockman, 231 Wis. 634).
Clearly, the Legislature ‘1 has provided, in no uncertain manner, as a condition precedent * * * that the question of probable cause * * * shall be determined by the issuing judge * * * and not by the affiant” (Maser v. State, 179 Md. 293, 303; Riley v. State, 179 Md. 304, supra; People v. Politano (17 A D 2d 503, 506, affd. 13 N Y 2d 852; Matter of Rosenwasser Bros. (254 F. 171, 173), and in Aguilar v. Texas (378 U. S. 108, 111.) The court said: “ Thus, when a search is based upon a magistrate’s, rather than a police officer’s, determination of probable cause, the reviewing courts will accept evidence of a less ‘ judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,’ * * * and will sustain the judicial determination ’ ’■ so long as there was substantial basis therefor. Probable cause, however, may only, be found ,£ ‘ from facts or circumstances presented to him under oath or affirmation” (Nathanson v. United States, 290 U. S. 41, 47). “In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved. ‘ The substance of all the definitions ’ of probable cause 1 is a reasonable ground for belief of guilt. ’ # * * And this £ means less than evidence which would justify condemnation ’ or conviction, as Marshall, C. J., said for the Court more than a century ago * * *. Since Marshall’s time,..a,t any rate, it has come to mean more than bare suspicion: Probable cause exists where ‘ the facts and circumstances within their * * * knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man or reasonable caution in the belief that ’ an offense has been or is being committed ”. (Brinegar v. United States, 338 U. S. 160, 175-176; emphasis supplied). Stated in another way, the existence of probable cause must rest upon facts and circumstances amounting to £ £ more than suspicion or possibility, even though not certainty or proof ” (Manger v. State, 214 Md. 71, 79). In reaching his determination of the existence of probable cause the judicial officer may rely upon the experience and special knowledge of the affiant ‘ ‘ reinforced by the facts sworn to ” (Manger v. State, supra, p. 79). Tested by those standards, the affidavits upon which the original and subsequent interception orders were made in this case would *529 have been sufficient to establish reasonable ground for belief that evidence of crime might have been obtained within a reasonable time after the disclosure that the Oelkers woman had perjured herself.
The applicant was an assistant in charge of the Backets Bureau of the District Attorney’s office, with training and experience in ferreting out evidence of crime and in prosecuting the perpetrators. The Justice who made the orders was entitled to rely upon the assistant’s special training and experience when he accepted the affiant’s conclusory allegations of ultimate facts by which it was made to appear that Carolyn Oelkers, when called before the Grand Jury to testify as to the facts of the alleged extortion attempt theretofore made upon her, exonerated— or at least did not inculpate — those whom she had previously accused of the offense, and that in so doing she committed perjury in one or more respects. The facts and circumstances thus alleged could justify substantially more than suspicion or possibility that a timely interception of the recalcitrant witness’ telephone conversations would provide evidence of the reasons for her perjury and possibly disclose the identity of the person or persons who had either suborned the perjury or intimidated the witness and, in either event, had thereby obstructed the administration of justice. However, the only dates mentioned in the respective affidavits for the wire-tap orders are May 2, 1962 and May 22, 1962. It is alleged that on May 2, Carolyn Oelkers signed an affidavit alleging that three named men “ obtained money or property with her consent induced by the unlawful use of force or fear.” That on May 22 she 11 appeared as a witness before the Grand Jury and her testimony was in conflict with the statements made in the aforesaid affidavit.” The first wire-tap order was not obtained until September 20, 1963, some 16 months thereafter and the affidavit of the Assistant District Attorney is completely silent as to when he first learned of the perjury. For that reason there was an insufficient showing to warrant a determination that probable cause existed at that time for insurance of the orders. In the absence of other pertinent circumstances, not here shown to exist, information 16 months old must be considered stale as a matter of law. Of necessity, this conclusion is reached by drawing upon principles judicially established in search and seizure cases but, within obvious limits, their application to interception cases seems entirely appropriate.
In the separate opinion of Mr. Justice Beynolds in Sgro v. United States (287 U. S. 206, 215-216) we find that “ The sup *530 porting affidavit must relate to facts which tend to show an unlawful situation actually or probably existing at the moment ”. (Italics added.) Or, as the majority put it in the same case: “ the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time” (p. 210; emphasis supplied). (See, also, United States v. Di Re, 332 U. S. 581, 592; Dumbra v. United States, 268 U. S. 435, 441; United States v. Nichols, 89 F. Supp. 953, 956; Neal v. Commonwealth, 218 Ky. 718; Leon v. State, 180 Md. 279, cert. den. sub nom. Neal v. Maryland, 316 U. S. 680; State v. Gardner, 74 Mont. 377.)
This basic requirement is not met if “ facts on which the affidavit was made and the warrant was issued were stale at the time ” (Peccio v. State, 53 Okla. Cr. 113, 114) and there is neither a showing of “intervening facts disclosing continuing cause ” (People v. Chippewa Circuit Judge, 226 Mich. 326, 328) nor other averment of fact by which the remote event is 11 tied down to a condition of fact existing at the time of making the affidavit” (State ex rel. Stange v. District Ct., 71 Mont. 125, 130; see, also, Rupinski v. United States, 4 F. 2d 17, 18 [C. C. A. 6th]; Dandrea v. United States, 7 F. 2d 861, 865 [C. C. A. 8th]). Of course, “whether or not the affidavit is sufficient must be determined by what appears on its face ” (Stroud v. Commonwealth, 295 Ky. 694, 696; Poldo v. United States, 55 F. 2d 866, 868 [O. C. A. 9th]).
On its face, the affidavit of September 19, 1963 was insufficient to establish probable cause for belief in the existence of grounds for the issuance of the order of September 20, 1963 in that the affidavit failed to supply the actual or approximate date when Carolyn Oelkers revealed to the Assistant District Attorney the perjury committed by her some 16 months prior to the application for the order. The time, being essential to a determination of probable cause', “must appear upon the face of the affidavit and of course, the nearer it is to the time of the application the more effective it is to justify a conclusion of probable cause ” (Waggener v. McCanless, 183 Tenn. 258, 262) and “failure to state the time when the alleged facts occurred rendered the affidavit insufficient and the [order] issued pursuant thereto void ” (Duncan v. Commonwealth, 297 Ky. 217, 218; see, also, Poldo v. United States, 55 F. 2d 866, 868, supra; Henson v. Commonwealth, 347 S. W. 2d 546, 548 [Ky. 1961]; State v. Dondis, 111 Me. 17; People v. Musk, 231 Mich. 187; Odom v. State, 121 Tex. Cr. Rep. 209).
The same defect underlies the orders of October 10, 1963 and October 21, 1963, respectively, since they were issued upon *531 affidavits that were deficient in the same respect. There was, therefore, no lawful authority for the interception which gained for the officers the knowledge upon which they had to depend for the “ probable cause ” essential to a lawful arrest without a warrant, and, perforce, for an incidental search and seizure. It follows that not only must the tangible property so seized, be suppressed, but any admissions obtained as a result of the seizure thereof (the fruit of the poisonous tree) must likewise be suppressed (People v. Robinson, 13 N Y 2d 296; People v. Rodriguez, 11 N Y 2d 279, 286; Wong Sun v. United States, 371 U. S. 471, 488; People v. Logan, 39 Misc 2d 593).
This consequence is not avoided by the fact that Mrs. Wenger admitted the police to her apartment.
At best, police assertions of admission to the dwellings of suspects, by invitation or consent, are subject to suspicion that entry was actually effectuated by royal suggestion (Johnson v. Zerbst, 304 U. S. 458; People v. Porter, 37 Misc 2d 73). By application of the rule that proof of similar acts is admissible to demonstrate the existence of a common plan into which the critical act fits, the evidence that the police officers in this case broke down the door of an innocent tenant in the building wherein defendant Wenger resided and had the effrontery to suggest to the court that this forcible entry was perpetrated in response to outcries by the doctor and his wife for police help, taken along with the visual and auditory tests of credibility, compel a finding of fact that the entry into the Wenger apartment was not by invitation or consent but was managed by coercion (People v. Cangione, 33 Misc 2d 23, 26). The tangible evidence may not, therefore, be received as a product of entry and search by consent.
There remains for decision the treatment that should be given the unlawful wire-tap interceptions. The want of specific statutory authority has not, in the past, deterred the courts from exercising an inherent power to suppress illegally obtained evidence (People v. Loria, 10 N Y 2d 368, 374; People v. Politano, 17 A D 2d 503, affid. 13 N Y 2d 852; People v. Du Bois, 31 Misc 2d 157, 159-163). When the statute (Code Grim. Pro., §§ 813-c to 813-e) was enacted, its provisions paralleled the action theretofore taken by the Federal courts (Fed. Rules, rule 41, subd. [e] Grim. Pro.) and the reasons for continuing the parallel by adapting the suppression procedure to include the direct and indirect pelf of illegal wire tapping seem as persuasive in New York as they must have been — and still are — to the Federal courts.
*532 Additionally, they are reinforced by other considerations in this case. As matters now stand, by reason of my ruling — the tangible evidence, as well as the admissions made by the defendants subsequent to the seizure thereof, is to be suppressed. That is so because the information upon which the police acted was obtained by an illegal interception. For that reason, the evidence gathered as a result of the interception may not be received upon any preliminary hearings or on the trial of the indictment (CPLR 4506). If the order to be made upon this motion does not deal with the telephone communications themselves, it will necessarily be left for the trial court to enforce the ban on the use of that evidence, and presumably, it would be moved, by the res judicata principle, to reject the District Attorney’s offer of any such proof. In the event of an acquittal, the District Attorney would have no means of reviewing the justice of the ruling excluding that evidence. In short, he would be foreclosed by the very authority upon which he relies in urging that, in its consideration of this matter, this court should give the People the benefit of any ‘ ‘ slight doubt ’ ’ of the law (People v. Reed, 276 N. Y. 5, 9). The rule of the Reed case is applicable to trial determinations which frustrate the prosecution in such a way as to leave the District Attorney without any right of review by way of appeal. The opposite result is here reached by directing that the evidence and leads procured by the interception, as well as the interceptions themselves, be suppressed for the District Attorney has a right to appeal from an order granting a motion for suppression, if the sum of the proof available is thereby rendered either insufficient in law or so weak as to destroy any reasonable possibility of successfully prosecuting the charge (Code Grim. Pro., § 518-a). All things considered, therefore, the interests of justice suggest that the order to be made in this case should direct the suppression of the tangible evidence, the admissions obtained subsequent thereto and as a result of the seizure thereof, and the interceptions themselves (cf. People v. Logan, 39 Misc 2d 593, supra).
In view of my conclusion, I do not find it necessary to pass on the additional contention of two of the defendants, that the statements they gave to the police may not be used against them in view of the conceded fact that they were obtained while the defendants were in custody and at a time when their counsel had informed the police and the District Attorney that they did not desire their clients to be interviewed (Escobedo v. Illinois, 378 U. S. 478; People v. Donovan, 13 N Y 2d 148; People v. Failla, 14 N Y 2d 178; People v. Gunner, 21A D 2d 900).
*533 I have not overlooked the defendants’ contention that the order of October 10, 1963 is void because it authorized interception beyond the two-month period permitted by the statute (Code Grim. Pro., § 813-a). However, by the very words of the statute, that fact would only impair the validity of the order to the extent that a continuance of the interception after the two-month period could not be considered as having legal sanction.
For the reasons above set forth the motion of all four defendants is granted to the extent of suppressing the physical evidence, the statements obtained from the defendants as a result of their arrest, and the statements intercepted pursuant to the wire-tap orders. Short form order signed and entered.