J. Irwin Shapiro, J.
The defendant Gold who has been indicted on a charge of abortion (Indictment No. 1266-64) has applied for an order “ to suppress the evidence seized from the defendant or from his office at 1745 Catón Avenue in the County of Kings on May 12, 1964, to suppress any evidence the People may have received via a wiretap or through any electronic eavesdropping, and to suppress any confession or statement given to them by Doctor Gold * * * on and after May 12,1964
*496 Defendants Scharfstein and Raicus are separately charged with the crime of abortion (3 counts) in that on various dates they, acting in concert with each other, used instruments designed to and they did cause and procure the miscarriage of three women (Indictment No. 1268-64) and in a third indictment (No. 1267-64) defendants Scharfstein and Gold, have been charged with similar crimes.
By consent of the District Attorney and with the permission of the court defendants Scharfstein and Raicus were permitted to join in the motion of the defendant Gold without the necessity of' submitting additional papers. It was agreed that a hearing would be held to cover the motions in all the cases.
At the hearing it appeared that no physical evidence was taken from any of the defendants and that therefore there were no physical objects to be suppressed. The District Attorney thereupon stated “ that justice for all, for both the People as complainants and the defendants would be served by having a more open and complete hearing” and it was stipulated that the court should inquire into and pass upon the sufficiency of the affidavit upon which the original wiretap order was obtained.
The District Attorney produced one witness, a policewoman. She testified, in substance, that after receiving a complaint from police in Nassau County about an abortion committed in Kings County she interviewed the complainant and her husband and took statements from them in which they stated that the defendant Gold had performed an abortion upon the complainant in the defendant’s office in Brooklyn at a time when the complainant’s husband was present.
At that point all the evidence necessary to convict the defendant Gold on what is now the subject matter of Indictment No: 1266-64 was in the possession of the police. They had the complainant, another witness — the husband, medical testimony, and evidence of the payment to Gold of the fee for the abortion as well as at least one document in Gold’s handwriting which tended to corroborate the complainant’s presence in his office. However, no arrest was made at that time. Instead the policewoman spoke to her superiors and one of them, Lieutenant William Harris, prepared an affidavit, in which he was the affiant, for the purpose of obtaining an order to tap Gold’s telephone. Harris had no personal knowledge of any of the events and there was no corroborating affidavit by the policewoman.
Such an order was obtained from a Supreme Court Justice in New York County and all of the information and evidence subsequently developed against the remaining defendants (as well as additional evidence against Gold) flowed from that tele *497 phone tap. Without the proof thus obtained there would be no evidence against any of the defendants as to any crimes other than the one charged against Gold alleged in Indictment No. 1266-64. The District Attorney conceded that if the original wiretap order were invalid all of the subsequent wiretap orders (which were all based on the first) would necessarily fall.
Section 813-a of the Code of Criminal Procedure lays down certain preconditions for the issuance of an eavesdropping order. It provides: 1 ‘ An ex parte order for eavesdropping as defined in subdivisions one and two of section seven hundred thirty-eight of the penal law may be issued by any justice of the supreme court or judge of a county court or of the court of general sessions of the county of New York upon oath or affirmation of a district attorney, or of the attorney-general or of an officer above the rank of sergeant of any police department of the state or of any political subdivision thereof, that there is reasonable ground to believe that evidence of crime may be thus obtained and particularly describing the person or persons whose communications, conversations or discussions are to be overheard or recorded and the purpose thereof, and, in the case of a telegraphic or telephonic communication, identifying the particular telephone number or telegraph line involved. In connection with the issuance of such an order the justice or judge may examine on oath the applicant and any other witness he may produce and shall satisfy himself of the existence of reasonable grounds for the granting of such application.” Thus a wiretap order may not issue unless it is supported by oath or affirmation showing “ that there is reasonable ground to believe that evidence of crime may be thus obtained ”. In connection with the application for such an order, the court may examine upon oath not only the applicant but any other witness necessary to satisfy him of the existence of such grounds. In this case the Justice who signed the order took no oral testimony in support of the application but relied solely on the affidavit of Lieutenant Harris annexed thereto.
The affidavit is on a mimeographed form and in its entirety reads as follows:
william HARRIS being first duly sworn, deposes and says:
That he is a Lieutenant in the Police Department of the City of New York, assigned to Auxiliary Service Division.
That it is part of deponent’s duties to make confidential investigations of crime and criminals and to apprehend criminals.
That deponent at the present time is attempting to secure evidence of violations of the Penal Law of the State of New York, to wit: Section 80 of the Penal Law, Abortions.
*498 That deponent has been informed by persons in a position to know and whom he believes to be telling the truth that Barry D. Gold, and others whose names are unknown, are engaged in the illegal commission of abortions at premises 1745 Catón Avenue, County of Kings, City and State of New York, and are using telephone instrument BU 2-7026 in connection therewith.
That the source of deponent’s confidential information is not divulged in this affidavit, but deponent is ready and willing to divulge this confidential information to the court.
That deponent has been informed that there is a private telephone located at premises 1745 Catón Avenue, County of Kings, City and State of New York, listed in the records of the New York Telephone Company in the name of Harry D. Gold, M. D., and bearing the number BU 2-7026.
That deponent believes that if he is permitted to intercept the telephone messages being transmitted ovér the above telephone instrument he will be able to obtain evidence against the said Harry D. Gold and others.
wherefore, deponent requests an order permitting the Police Commissioner of the City of New York, or a duly authorized agent of the Police Commissioner, to intercept any communications being transmitted over the said telephone instrument BU 2-7026, and permitting the Police Commissioner of the City of New York, or his duly authorized representative to tap and make connections with any and all wires leading to and from the aforementioned telephone instrument.
That to deponent’s knowledge no previous application has been made by the Police Department of the City of New York for an order permitting the interception of messages over the aforementioned telephone instrument. (Emphasis supplied.)
Even a cursory reading of the affidavit shows its patent insufficiency to warrant the issuance of the telephone interception order. To say in an affidavit “ That deponent has been informed by persons in a position to know and whom he believes to be telling the truth that Harry D. Q-old and others whose names are unknown, are engaged in the illegal commission of abortions ” at certain named premises, “ and are using telephone instrument BU 2-7026 in connection therewith ”, tells the court which is issuing the order absolutely nothing upon which it can base a reasoned judicial determination. The court is not informed how the Lieutenant’s informants are “in a position to know” what they are telling him nor is there set forth the basis upon which he has come to the conclusion that they are “ telling the truth ”, nor is the affidavit strengthened by affiant’s additional statement that he is not divulging the source of his “ confidential information in the affidavit ” but “ is ready and willing to divulge this confidential information to the court ”. If his willingness ‘ ‘ to divulge this confidential information to the court ” had been accepted by it, and the policewoman’s information had been thus made known to the court there would have been sufficient foundation for the issuance of the order but it is conceded that the court issued the wiretap order solely on the *499 basis of what is contained within the four corners of the affidavit.*
It is clear that standing -by itself the affidavit is woefully defective for it contains no ultimate facts sufficient to indicate that any grounds, least of all reasonable ones, exist for the issuance of an eavesdropping order.
In People v. Beshany (43 Misc 2d 521) I had occasion to discuss the required degree of proof necessary to be shown before a wiretap order could validly issue. After pointing out (p. 527) that the basis for obtaining a search warrant or a wiretap order are the same and that ‘1 The terms ‘ reasonable grounds ’, ‘ reason to believe ’ and ‘ reasonable cause ’ are employed interchangeably ” in various statutes, I then said (p. 528): “ Clearly, the Legislature ‘ has provided, in no uncertain manner, as a condition precedent * * * that the question of probable cause * * * shall be determined by the issuing judge * * * and not by the affiant ’ (Maser v. State, 179 Md. 293, 303; Riley v. State, 179 Md. 304, supra; People v. Politano, 17 A D 2d 503, 506, affd. 13 N Y 2d 852; Matter of Rosemoasser Bros. (254 F, 171, 173), and in Aguilar v. Texas (378 U. S. 108, 111.) The court said: ‘ Thus, when a search is based upon a magistrate’s rather than a police officer’s determination of probable cause, the reviewing courts will accept evidence of a less “ judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,” * * * and will sustain the judicial determination ’ so long as there was substantial basis therefor. Probable cause, however, may only be found ‘ from facts or circumstances presented to him under oath or affirmation ’ (Nathanson v. United States, 290 U. S. 41, 47). ‘In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved. “ The substance of all the definitions” of probable cause “ is a reasonable ground for belief of guilt.” * * * And this ‘ ‘ means less than evidence which would justify condemnation ” or conviction, as Marshall, 0. J., said for the Court more than a century ago * * *. Since Marshall’s time, at any rate, it has come to mean more than bare suspicion; Probable cause exists where “ the facts and circumstances within *500 their * * * knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable'caution in the belief that ” an offense has been or is being committed (Brinegar v. United States, 338 U. S. 160, 175-176; emphasis supplied).”
And in United States v. Ventresca (380 U. S. 102, 108-109) the court although stating that “ Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area ” because “ They [the affidavits] are normally drafted by nonlawyers in the midst and haste of a criminal investigation ” nevertheless held that “ This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant’s or an informer’s belief that probable cause exists without detailing any of the ‘ underlying circumstances ’ upon which that belief is based. See Aguilar v. Texas, supra.” since “ Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached functions and not serve merely as a rubber stamp for the police ”..
Lieutenant Harris’ affidavit was insufficient to establish probable cause for belief that defendant Gold ‘ ‘ and others whose names are unknown, are engaged in the illegal commission of abortions at premises 1745 Catón Avenue ” because it clearly appears therefrom that that statement was given to him by others and the court is left in total darkness about the mental processes engaged in by the Lieutenant in determining that his informants were truthful. In the absence of such proof the court was not warranted in issuing the order. If an affidavit of the kind here used, not made upon knowledge, and without disclosure of the source or even the slightest indication of the reliability of the information is sufficient then in truth and in fact the Judge is merely rubber-stamping the affiant’s wholly conclusory affidavit.
It is quite apparent from the hearing in this case, and from the papers submitted to me, that a great deal of time, effort and money has been spent by the authorities in an effort to successfully prosecute these defendants. I am informed that there are similar prosecutions pending against them, or some of them, in both Queens and Nassau Counties, the validity of all of which, depends upon whether or not the instant wiretap order is valid. It is unfortunate that under such circumstances everything that has transpired must be rendered nugatory, and justice possibly thwarted, when the police at the time of obtaining the wiretap order had the requisite information to obtain a valid wiretap *501 order if only it were put before the issuing Judge, but .that is something over which I have no control.
I have heretofore deplored the casualness with which these ex parte wiretap orders are applied for and granted when I said in People v. Hendricks (45 Misc 2d 7,12): “ It is high time that the police authorities adopt a policy for .the drawing of such warrants and their supporting affidavits, or at least for the review thereof, by persons having some expertise in the field of legal documents. Too often such warrants for search and seizure, submitted and passed upon ex parte, do not receive the careful judicial scrutiny to which they are put when they are directly attacked, with the result that many a good criminal case turns 1 sour ’ for the prosecution, an outcome which, while helpful to the criminal involved, scarcely aids in the promotion of true justice.”
The legally compelling necessity here to vacate the wiretap order and to suppress all the information and evidence obtained by the utilization thereof again point up the necessity for the use of persons with legally trained minds to draw such important papers as affidavits to be used to obtain search warrants or wiretap orders.
In view of the conclusion to which I have come, as to the basic invalidity of the wiretap order because of the insufficiency of the affidavit upon which it was based, I do not reach the question of the constitutionality of section 813-a of the Code of Criminal Procedure which has been discussed in the various memoranda of counsel (see however in this connection, Schwarts v. Texas, 344 U. S. 199; Nardone v. United States, 302 U. S. 379 and 308 U. S. 338; People v. Dinam, 11 N Y 2d 350, cert. den. 371 U. S. 877; United States ex rel. Graziano v. McMann, 275 F. 2d 284; Pugach v. Dollinger, 365 U. S. 458).
The motion of the defendants is granted to the extent of vacating the original wiretap order, all renewals thereof, and all of the evidence obtained in reliance thereon. Settle a separate order for each indictment.

 A police interdepartmental memorandum appears stapled in the back of the affidavit, but the policewoman — the sole witness at the hearing — was unable to say whether it was before the Judge at the time he signed the order and in any event it basically adds nothing to the affidavit.